**Denver SHELTON and Kenneth Shelton, Appellants,**

v.

**STATE of Indiana, Appellee.**

**No. 59A01–9603–CR–72.**

Court of Appeals of Indiana.

Feb. 11, 1997.

Publication Ordered April 30, 1997.

---

Brent Welke, English, for Appellants–Defendants.

Pamela Carter, Attorney General, Randi F. Elfenbaum, Deputy Attorney General, Indianapolis, for Appellee–Plaintiff.

### OPINION

ROBERTSON, Judge.

Denver and Kenneth Shelton appeal their convictions, after a jury trial, of Road Hunting, a class C misdemeanor, defined as:

It shall be unlawful for any person to hunt, shoot, shoot at, or kill any animal or to shoot at any object from within, into, upon or across any public highway in this state.

Ind.Code 14–2–4–5(1) (Repealed by P.L.1–1995, § 91). The Sheltons raise five issues,

which we restate and consolidate into four, none of which constitute reversible error.

## FACTS

The facts in the light most favorable to the verdict reveal that an Indiana Conservation Officer [ICO] had received a report that persons had been shooting deer from their automobiles in Orange County. In response, three ICOs placed an electronic remote-control deer decoy in a field approximately ninety feet to the west of a gravel county road. The officers staked out the scene. Two officers concealed themselves across the road where they could see the decoy. When motorists would pass, one of these officers would operate the remote control decoy causing its head and tail to move. The other officer would videotape the scene. The third officer parked his car approximately a mile away to wait for the others' signal to apprehend any offenders.

In less than an hour, the Shelton brothers came along in their pickup truck. Denver was driving and Kenneth was sitting in the passenger seat. The truck stopped in the road with all four wheels remaining on the roadway directly across from where the officers were hiding. Kenneth aimed a gun out the window of the truck and fired two shots at the decoy, striking and disabling it.

Kenneth was charged with road hunting and Denver was charged with aiding the offense. Before trial, the trial court noted that the parties had stipulated that there had been no contact between the law enforcement officers and the Sheltons before the alleged offense and entered a detailed order in limine which prohibited the Sheltons from 1) raising the defense of entrapment without leave of the court, 2) raising any issue relating to trespassing (Sheltons assert the ICOs trespassed on private property in setting up the decoy), 3) raising any issue pertaining to illegal search and seizure, and 4) mentioning that they had permission to hunt on the land.

The jury returned guilty verdicts and this appeal ensued. Additional facts are supplied as necessary.

## DECISION

### I.

#### *Entrapment*

The Sheltons argue that they were entrapped by the law enforcement officers, noting that no crime would have been committed but for the officers' placement of the decoy on the property in question. The Sheltons argue that the trial court's pretrial orders erroneously deprived them of the opportunity to raise the defense of entrapment.

The defense of entrapment is defined by Ind.Code 35–41–3–9 as follows:

(a) It is a defense that:

(1) the prohibited conduct of the person was the product of a law enforcement officer, or his agent, using persuasion or other means likely to cause the person to engage in the conduct; and

(2) the person was not predisposed to commit the offense.

(b) Conduct merely affording a person an opportunity to commit the offense does not constitute entrapment.

It has long been a basic tenet of Indiana law that, although the defendant bears the burden of placing his affirmative defense in issue, the prosecution bears the ultimate burden of negating any defense which is sufficiently raised by the defendant. *Wolfe v. State*, 426 N.E.2d 647, 652 (Ind.1981). If the State presents a prima facie case of guilt, then the defendant has the burden of going forward with an evidentiary basis to support his affirmative defense. *Tyson v. State*, 619 N.E.2d 276, 294 (Ind.Ct.App. 1993), *trans. denied, cert. denied,* 510 U.S. 1176, 114 S.Ct. 1216, 127 L.Ed.2d 562. Requiring a defendant to establish an evidentiary basis does not shift the burden of proof because the State retains the ultimate burden of proving guilt beyond a reasonable doubt which must entail proof rebutting the defendant's affirmative defense. *Id.*

It is incumbent upon the defendant to affirmatively raise the defense of entrapment. *Strong v. State*, 591 N.E.2d 1048, 1050 (Ind.Ct.App.1992), *trans. denied.* The entrapment defense is raised once the evidence includes a showing of police involve-

ment in the criminal activity; no formal pleading of the defense is required.[1] *Id.* Once a defendant has indicated his intent to rely on the defense of entrapment and has established police inducement, the burden shifts to the State to show the defendant's predisposition to commit the crime. *Dockery v. State*, 644 N.E.2d 573, 577 (Ind.1994). The State must prove the defendant's predisposition to commit the crime beyond a reasonable doubt. *Id.* If the defendant shows police inducement and the State fails to show predisposition on the part of the defendant to commit the crime charged, entrapment is established as a matter of law. *Id.* However, even in the context of undisputed police participation in criminal activity, if evidence of the defendant's predisposition to commit the crime is presented, the defendant is not entitled to an instruction on the entrapment defense unless he presents evidence showing a lack of predisposition. *Strong*, 591 N.E.2d at 1051.

In the present case, the trial court's pretrial order reads, in pertinent part, as follows:

> unless and until the defendants shall, under I.C. 35–41–3–9(b) submit evidence of "conduct *more than* merely affording a person an opportunity to commit the offense," the question of entrapment shall not be mentioned in the presence of the jury but is reserved for argument by counsel upon notice and after removal of the jury from the courtroom.

(Emphasis original). The trial court's order merely placed the burden of going forward with some evidence of a lack of predisposition upon the Sheltons in order to satisfy their obligation to raise the entrapment defense. The undisputed facts of this case reveal that the officers involved did not directly participate in the criminal activity of road hunting, but merely placed the decoy deer off the road where the Sheltons could see it. Under these circumstances, we cannot conclude that the trial court committed reversible error in requiring the Sheltons to go forward with

evidence to raise the entrapment defense. *Tyson*, 619 N.E.2d at 300 (Before an appellant is entitled to reversal, he must show error which was prejudicial to his substantial rights.)

## II.

### *Pretrial Orders in Limine*

■ The Sheltons argue that the other pretrial orders prohibited them from presenting an effective defense. Specifically, they argue that but for the pretrial order prohibiting them from mentioning that they had permission to hunt on the land, they would have presented evidence that they had pulled the truck off the road and were not guilty of the charged offense because the shots had been fired from off the road on the landowner's property. The Sheltons argue that they should have been permitted to introduce this evidence under the theory of res gestae which permits the introduction of happenings near in time and place which complete the story of the crime, citing *Wilson v. State*, 491 N.E.2d 537 (Ind.1986).

Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Ind. Evidence Rule 401; *Hardin v. State*, 611 N.E.2d 123, 127 (Ind.1993) (Evidence is relevant if it tends to prove or disprove a material fact or sheds any light on the guilt or innocence of the accused). Evidence which is not relevant is not admissible. Evid.R. 402. Error in the exclusion of evidence will not warrant reversal unless a substantial right of the party is affected. Evid.R. 103.

The trial court did not abuse discretion in prohibiting the evidence that the Sheltons had permission to hunt on the land. This evidence was of no consequence to the determination of the Sheltons' guilt. That the Sheltons may have had permission to hunt on the land in no way exonerated them from criminal liability for the charged offense of

---

**1.** To raise the affirmative defense of entrapment under federal law, the defendant must produce evidence of *both* the Government's inducement and his own lack of predisposition before the

burden of proof shifts to the Government. *United States v. Gunter*, 741 F.2d 151, 153 (7th Cir. (Ind.) 1984).

shooting at an object from the road. The trial court placed no obstacle before the Sheltons with respect to their defense that the shooting actually took place on the land, and not from the road. The Sheltons were free to rebut the State's proof, as shown by the officers' testimony, that the shots were fired from the road, and not from the land upon which they had been given permission to hunt. Therefore, we find no error.

### III.

*Comment on Defendant's Silence—Mistrial*

■ During opening arguments, the prosecutor stated:

[A conservation officer] will testify about a statement that Denver Shelton made; a voluntary statement; there was no questioning going on. Denver Shelton said to [the ICO] there at the scene, "You're trying to say I shot. I don't even have a gun." I think, ladies and gentlemen, I think you're going to find that that's a very important for a number of reasons, because the evidence will show that he did not say that shots weren't fired, he did not say shots weren't fired from the road, he did not say he didn't know shots were going to be fired, and he did not say that he tried to stop the other defendant, Kenneth, from trying to shoot.

The Sheltons moved the court for a mistrial, arguing that the argument impermissibly commented upon the exercise of their constitutional right not to testify.

■ A mistrial is an extreme remedy warranted only when no other curative measure will rectify the situation and whether to grant a motion for a mistrial is a matter committed to the sound discretion of the trial court. *James v. State*, 613 N.E.2d 15, 22 (Ind.1993). When determining whether a mistrial is warranted, the court on review must consider whether the defendant was placed in a position of grave peril to which he should not have been subjected. *Id.* The gravity of the peril is determined by the probable persuasive effect on the jury's decision. *Id.* The determination of whether to grant a mistrial is within the trial court's discretion, and great deference is accorded

the trial court on appeal as it is in the best position to gauge the circumstances and the probable impact on the jury. *Schlomer v. State*, 580 N.E.2d 950, 955 (Ind.1991).

■ In general, the prosecution is not permitted to introduce evidence of a defendant's exercise of his constitutional rights in order to impeach the defendant or invite the jury to infer the defendant's guilt from the exercise of those rights. *Doyle v. Ohio*, 426 U.S. 610, 618, 96 S.Ct. 2240, 2245, 49 L.Ed.2d 91 (1976) (Use of defendant's post-*Miranda* silence); *McCoy v. State*, 574 N.E.2d 304, 306–307 (Ind.Ct.App.1991) (Harmless error found in the use of defendant's refusal to submit to a medical examination). However, the prosecutor's comment upon the lack of evidence by the defense concerning otherwise incriminating evidence against the defendant is proper as long as the State does not focus upon the accused's failure to testify. *Martinez v. State*, 549 N.E.2d 1026, 1028 (Ind.1990). Moreover, the improper use of the defendant's assertion of his constitutional rights may be harmless if the reviewing court, after assessing the record as a whole to determine the probable impact of the improper evidence on the jury, concludes beyond a reasonable doubt that the error did not influence the verdict. *Bieghler v. State*, 481 N.E.2d 78, 92 (Ind.1985), *cert. denied*, 475 U.S. 1031, 106 S.Ct. 1241, 89 L.Ed.2d 349; *McCoy*, 574 N.E.2d at 307; *Heyward v. State*, 524 N.E.2d 15, 19 (Ind.Ct.App.1988). Among the factors to be addressed in this analysis are 1) the use to which the prosecution puts the assertion of a constitutional right; 2) who elected to pursue the line of questioning; 3) the quantum of other evidence of guilt; 4) the intensity and frequency of the reference; and 5) the availability to the trial judge of an opportunity to grant a motion for mistrial or to give curative instructions. *Id.*

The prosecutor's comments constituted an explanation of the incriminating nature of the comments that one of the brothers had made. The comments did not focus on the defendants' exercise of their right not to testify. Moreover, the quantum of evidence properly admitted against the Sheltons, as set out in the FACTS section, overwhelmingly demon-

strates their guilt. Therefore, we hold that any error in the State's utilization of the Shelton's silence was harmless beyond a reasonable doubt. The trial court did not err in refusing to grant the Sheltons' motion for a mistrial.

### IV.

#### Suppression of Deer Decoy Evidence

■ The Sheltons assert that the trial court erred by denying their request to suppress the evidence related to the deer decoy. The Sheltons argue that the decoy evidence should be suppressed because the ICOs broke the law by trespassing on private property in order to place the decoy by the road. The Sheltons argue that the officers lacked probable cause to suspect that illegal deer hunting was taking place.

When the ICOs set up the decoy involved in the present case, the following statute was in effect:

> The director and conservation officers ... may enter into or upon any private or public property for such purposes or for the purpose of patrolling or investigating when he has [probable cause] to believe that he will secure evidence of a violation of any of the laws for the propagation or protection of ... game, fur-bearing animals, ..., or any of the provisions of this article.

Ind.Code 14–2–9–1; *Richard v. State,* 482 N.E.2d 282 (Ind.Ct.App.1985).

Even if the ICO's trespassed upon the private property to set up the deer decoy, we would find no error. The land did not belong to the Sheltons; and, thus, they lacked the standing to raise the issue of whether the ICOs violated the law in setting up the decoy. *See Stout v. State,* 479 N.E.2d 563, 566–67 (Ind.1985) (Nonowner without any degree of control over the premises lacks standing to obtain suppression of evidence based upon an alleged violation of constitutional rights); *Garrett v. State,* 466 N.E.2d 8, 12 (Ind.1984) (Defendant who had permission to park his van on private property to sleep there lacked standing to object to police officers' entry onto that property at a time when defendant was not legitimately upon the property).

The Sheltons lacked standing to object to the officers' entry onto the private property to place a decoy thereon. Therefore, the trial court did not err in denying the Sheltons' request to suppress evidence and we find no error.

Judgment affirmed.

NAJAM and HOFFMAN, JJ., concur.

#### *ORDER*

This Court having heretofore handed down its opinion in this appeal on February 11, 1997 marked "Not for Publication"; and

The appellee, by counsel, having thereafter filed its Motion to Publish Memorandum Opinion and this Court having thereafter issued its order ordering the appellants to show cause within twenty (20) days from the date of that Order why this Court's opinion previously handed down as a Memorandum Decision, Not for Publication should not now be ordered published and the appellants having failed to show cause, this Court now finds that the appellee's Motion to Publish Memorandum Opinion should be granted and this Court's opinion in this appeal should now be ordered published.

IT IS THEREFORE ORDERED as follows:

1. The appellee's Motion to Publish Memorandum Opinion is granted and this Court's opinion heretofore handed down in this cause on February 11, 1997 marked "Memorandum Decision, Not for Publication" is now ordered published.

/s/ John T. Sharpnack
CHIEF JUDGE