James S. **FERGE**, Appellant–Defendant,

v.

**STATE of Indiana**, Appellee–Plaintiff.

No. 49A02–0108–CR–530.

Court of Appeals of Indiana.

Feb. 28, 2002.

Larry R. Champion, Kristopher N. Kazmierczak, Indianapolis, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Christopher L. Lafuse, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MATHIAS, Judge.

James Ferge ("Ferge") was convicted of patronizing a prostitute,[1] as a Class A misdemeanor, in Marion Superior Court. He was sentenced to serve one year in the Marion County Jail and was given credit time of four days. The remaining 361 days were suspended, and Ferge was placed on probation for 180 days. He appeals raising three issues; however, we find the following issue to be dispositive: whether the State presented sufficient evidence to rebut Ferge's defense of entrapment.

We reverse.

### Facts and Procedural History

On July 31, 2000, Indianapolis Police Officer Genae Gehring ("Officer Gehring") was working an undercover vice detail as a prostitute in the vicinity of Euclid Avenue and Washington Street on the east side of Indianapolis. There were approximately ten officers working in the immediate area with Officer Gehring. The goal of this operation was to arrest solicitors for prostitution.

At approximately 4:00 p.m., Ferge, driving his company truck southbound on Eu-

---

1. Ind.Code § 35–45–4–3 (1998).

clid Avenue, was stopped at a two-way stop sign at the intersection of Euclid Avenue and Washington Street. Officer Gehring was walking north on Euclid Avenue when she made eye contact with Ferge. Officer Gehring walked over to Ferge's truck and the following exchange took place:

Officer Gehring: Hey what's going on?

Ferge: Do you need a ride?

Officer Gehring: Maybe.

Ferge: Well, come on and get in.

Officer Gehring: Are you looking for a little more?

Ferge: Yes, get in.

Officer Gehring: Are you looking for a little head? [2]

Ferge: Yes, come on and get in.

Officer Gehring: Twenty bucks?

Ferge: Okay, get in.

Tr. p. 22. Officer Gehring then told Ferge to meet her in an alley behind a building on the northeast corner of the intersection, and proceeded to walk toward the alley. She also signaled the two officers observing the interaction between herself and Ferge.

Ferge turned right onto Washington Street, heading west. Instead of circling around the block to return to Euclid Avenue and meet Officer Gehring in the alley, he proceeded west on Washington Street for approximately seven blocks. At the intersection of Washington Street and Sherman Drive, he turned north onto Sherman Drive. Two blocks later, he was stopped by police at the intersection of Sherman Drive and Michigan Street and arrested.

On August 1, 2001, Ferge was charged with patronizing a prostitute, as a Class A misdemeanor. A jury trial was held on July 17, 2001. Ferge testified at trial that he offered Officer Gehring a ride because it was raining. He stated that he could not understand everything she was saying because of the noise from the diesel engine of his truck. Ferge testified that he was surprised when Officer Gehring started asking him questions about sex and told her that if she wanted a ride, that was fine, "but if she did not want a lift that was the end of it." Tr. p. 63.

The jury found Ferge guilty of patronizing a prostitute, as a Class A misdemeanor. Ferge was sentenced to serve 365 days in the Marion County Jail and given credit time of four days. The remaining 361 days were suspended, and Ferge was placed on probation for 180 days. He appeals.

### Discussion and Decision

■■■ Ferge argues that the State failed to produce sufficient probative evidence to negate his defense of entrapment. Specifically, he contends that the State failed to prove beyond a reasonable doubt that Ferge was predisposed to commit the crime of patronizing a prostitute. When we review a claim of entrapment, we use the same standard that applies to other challenges to the sufficiency of evidence. *Dockery v. State*, 644 N.E.2d 573, 578 (Ind. 1994) (citations omitted).

> We consider only the evidence that supports the verdict, and we draw all reasonable inferences from that evidence. We will neither reweigh the evidence nor judge the credibility of witnesses. We will uphold a conviction if the record supports it with substantial evidence of probative value from which a reasonable trier of fact could infer that the appellant was guilty beyond a reasonable doubt.

*Id.* (citations omitted).

■■■ Indiana Code section 35–41–3–9 defines the defense of entrapment and provides:

**2.** Street terminology for fellatio. Tr. p. 22.

(a) It is a defense that:

(1) the prohibited conduct of the person was the product of a law enforcement officer, or his agent, using persuasion or other means likely to cause the person to engage in the conduct; and

(2) the person was not predisposed to commit the offense.

(b) Conduct merely affording a person an opportunity to commit the offense does not constitute entrapment.

Once a defendant indicates that he intends to rely on the defense of entrapment and establishes police inducement, the burden shifts to the State to demonstrate the defendant's predisposition to commit the crime. *Dockery,* 644 N.E.2d at 577. "Whether a defendant was predisposed to commit the crime charged is a question for the trier of fact." *Id.* The State must prove the defendant's predisposition beyond a reasonable doubt. *Id.* "If the defendant shows police inducement and the State fails to show predisposition on the part of the defendant to commit the crime charged, entrapment is established as a matter of law." *Id.*

■■■ The defense of entrapment turns upon the defendant's state of mind, or "whether the 'criminal intent originated with the defendant.'" *Kats v. State,* 559 N.E.2d 348, 353 (Ind.Ct.App.1990), *trans. denied,* (quoting *U.S. v. Toro,* 840 F.2d 1221, 1230 (5th Cir.1988)). "In other words, the question is whether 'criminal intent [was] deliberately implanted in the mind of an innocent person[.]' " *Id.* (quoting *U.S. v. Killough,* 607 F.Supp. 1009, 1011 (E.D.Ark.1985)). The following factors are important in determining whether a defendant was predisposed to commit the charged crime:

1) the character or reputation of the defendant, 2) whether the suggestion of criminal activity was originally made by

the government, 3) whether the defendant was engaged in criminal activity for a profit, 4) whether the defendant evidenced reluctance to commit the offense, overcome by government persuasion, and 5) the nature of the inducement or persuasion offered by the government.

*Id.* (citing *U.S. v. Fusko,* 869 F.2d 1048, 1052 (7th Cir.1989)). Additionally, the United States Supreme Court has stated:

Law enforcement officials go too far when they "implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order that they may prosecute."... When the Government's quest for conviction leads to the apprehension of an otherwise law-abiding citizen who, if left to his own devices, likely would have never run afoul of the law, the courts should intervene.

*Jacobson v. U.S.,* 503 U.S. 540, 553–54, 112 S.Ct. 1535, 118 L.Ed.2d 174 (1992) (internal citation omitted).

■■■ In this case, Ferge clearly established police inducement; therefore, the State was required to prove Ferge's predisposition to commit the crime of patronizing a prostitute beyond a reasonable doubt. The evidence presented at trial revealed that Ferge was stopped at a stop sign at the intersection of Washington Street and Euclid Avenue when he made eye contact with Officer Gehring. Ferge offered her a ride, and at trial, Ferge's wife testified that it was not uncommon for him to give rides to strangers. It is undisputed that Officer Gehring initiated the conversation regarding whether Ferge would be interested in fellatio for payment. Officer Gehring testified that she believed they had made a deal whereby she would perform fellatio on Ferge for twenty dollars, and instructed Ferge to meet her in the alley across the street. However,

Ferge did not circle the block and meet Officer Gehring in the alley, but proceeded to drive away until he was stopped by the police nine blocks from the intersection of Washington Street and Euclid Avenue.

It is clear from the facts discussed above that the suggestion of criminal activity was made by Officer Gehring after Ferge offered her a ride. Ferge's action in driving away from the alley where Officer Gehring told Ferge to meet her is evidence that he did not intend to make a deal with Officer Gehring for sexual activity, as well as evidence that he was not predisposed to commit the crime of patronizing a prostitute.[3] Under these facts and circumstances, we find that the State did not present sufficient evidence at trial to prove that Ferge was predisposed to commit the crime of patronizing a prostitute, and that he established the defense of entrapment as a matter of law. *See Dockery,* 644 N.E.2d at 577.

Reversed.

BROOK, C.J., and RILEY, J., concur.

---

**3.** We also note that the jury was not instructed that the State had to prove beyond a reasonable doubt that Ferge was predisposed to commit the crime of patronizing a prostitute.