# FOR PUBLICATION



**FILED**
May 23 2014, 10:42 am

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**DANIEL L. MOORE**
Moore & Associates
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RICHARD C. WEBSTER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| KENNETH GRIESEMER, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A04-1308-CR-382 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Linda Brown, Judge
Cause No. 49F10-1208-CM-56547

**Opinion – For Publication**

**May 23, 2014**

**MAY, Judge**

Kenneth Griesemer appeals his conviction of Class A misdemeanor patronizing a prostitute.[1] He argues he was entrapped. We reverse.[2]

## FACTS AND PROCEDURAL HISTORY

On August 15, 2012, Indianapolis Metropolitan Police Department Detective Tabatha McLemore was posing as a prostitute on East Washington Street in Indianapolis. Around 2:30 p.m., Griesemer drove past her and stared at her as he passed. A few minutes later, Griesemer drove northbound toward Washington Street on Ewing Street. As he approached the corner of Ewing and Washington Streets, he asked Detective McLemore, through his open car window, if she needed a ride. She declined the ride, saying she was trying to make money. Griesmer nodded his head toward his passenger seat, which she understood to be an invitation to enter the car. She asked how much money he had, and he said twenty dollars. She told him she could perform fellatio for twenty dollars. He nodded his head "yes," and then he nodded toward the passenger seat to indicate she should get in the car. She asked him to pick her up "down the street."[3] (Tr. at 8.) Griesemer nodded in agreement, then turned right onto Washington Street, drove down the street, and pulled into the parking lot that he had used to circle back to Washington Street the first time. In that parking lot, uniformed officers in a marked police car stopped Griesemer and placed him under arrest.

---

[1] Ind. Code § 35-45-4-3.
[2] We held oral argument on this case on February 11, 2013, at the Indiana Statehouse, before an audience of participants in the Indiana Bar Association's Leadership Development Academy. We commend counsel for the quality of their advocacy.
[3] The precise location where Griesemer was to meet Detective McLemore is unclear from the record. Detective McLemore testified "he would have to, in order to come back around, he'd have to turn on to Washington Street and go around the loop which is what he did originally when he came back to speak with me." (Tr. at 8.)

The State charged Griesemer with one count of Class A misdemeanor patronizing a prostitute. Following a bench trial, the court entered a conviction thereof and imposed a 180-day sentence with 176 days suspended.

**DISCUSSION AND DECISION**

A person commits Class A misdemeanor patronizing a prostitute if that person "knowingly or intentionally pays, or offers or agrees to pay money or other property to another person . . . on the understanding that the other person will engage in . . . deviate sexual conduct with the person . . . ." Ind. Code § 35-45-4-3. Deviate sexual conduct includes acts involving "a sex organ of one person and the mouth or anus of another person." Ind. Code § 35-41-1-9. Griesemer acknowledges that agreeing to have Detective McLemore perform fellatio in exchange for twenty dollars would constitute patronizing a prostitute. He argues, however, that the State did not disprove his defense of entrapment.

Entrapment is a one of a handful of defenses that can eliminate a defendant's culpability for acts committed. *See* Ind. Code ch. 35-41-3 ("Defenses Relating to Culpability"). "Entrapment exists where an otherwise law-abiding citizen is induced through police involvement to commit the charged crime." *Lahr v. State*, 640 N.E.2d 756, 760 (Ind. Ct. App. 1994), *trans. denied*. Our legislature provided the following definition for entrapment:

(a) It is a defense that:
   (1) the prohibited conduct of the person was the product of a law enforcement officer, or his agent, using persuasion or other means likely to cause the person to engage in the conduct; and
   (2) the person was not predisposed to commit the offense.
(b) Conduct merely affording a person an opportunity to commit the offense

3

does not constitute entrapment.

Ind. Code § 35-41-3-9.

If a defendant asserts the defense of entrapment and establishes police inducement, then the burden of proof shifts to the State. *Dockery v. State*, 644 N.E.2d 573, 577 (Ind. 1994). The State must either disprove police inducement by demonstrating beyond a reasonable doubt that "the defendant's prohibited conduct was not the product of the police efforts," *McGowan v. State*, 674 N.E.2d 174, 175 (Ind. 1996), *reh'g denied*, or establish the defendant's predisposition to commit the crime. *Dockery*, 644 N.E.2d at 577. If the State does not meet its burden of proof, then entrapment has been established as a matter of law. *Id.*

"We review a claim of entrapment using the same standard that applies to other challenges to the sufficiency of evidence." *Id.* at 578. We consider only the evidence supporting the verdict and draw all reasonable inferences therefrom. *Id.* We neither reweigh the evidence nor judge witness credibility. *Id.* If the record contains substantial evidence of probative value that would have permitted a reasonable trier of fact to infer guilt beyond a reasonable doubt, then we will uphold a conviction. *Id.*

Griesemer asserts the police induced his behavior. After Griesemer offered Detective McLemore a ride, she was the first to mention money, the first to mention performance of a sexual act, and the first to mention trading a sexual act for money. Under nearly identical facts, we held a defendant had "clearly established police inducement." *Ferge v. State*, 764 N.E.2d 268, 271 (Ind. Ct. App. 2002) ("It is undisputed that Officer Gehring initiated the

4

conversation regarding whether Ferge would be interested in fellatio for payment.").

Accordingly, the burden shifted to the State to either disprove inducement or demonstrate Griesemer was predisposed to commit the crime. *See McGowan*, 674 N.E.2d at 175 (holding State must disprove inducement *or* prove predisposition). The State argues it "merely afforded the defendant the opportunity to commit this crime." (Oral Argument Video at 17:19-17:22; *see also* Appellee's Br. at 7.) In support thereof, the State notes the second part of the statute defining entrapment states: "(b) Conduct merely affording a person an opportunity to commit the offense does not constitute entrapment." Ind. Code § 35-41-3-9.

However, as our Indiana Supreme Court explained:

> Part (b) of the statute is explanatory of the level of police activity that would be necessary to support the entrapment defense but this section does not negate the requirement of the necessary predisposition on the part of the accused. We have consistently held that *if* the accused had the predisposition to commit the crime and the police merely afforded him an opportunity to do so, then the defense of entrapment is not available.

*Baird v. State*, 446 N.E.2d 342, 344 (Ind. 1983) (emphasis in original) (reversing conviction based on entrapment where State sent minor to purchase alcohol and "presented absolutely no evidence of defendant's predisposition to commit the crime"). Thus, if the police merely afforded a citizen an opportunity to commit a crime, then the State may not have induced that citizen's criminal behavior, *see*, *e.g.*, *Shelton v. State*, 679 N.E.2d 499, 502 (Ind. Ct. App. 1997) (evidence police "merely placed the deer decoy off the road where the Sheltons could see it" was not adequate to demonstrate inducement sufficient to entitle Sheltons to jury

5

instruction on entrapment), but it does not relieve the State of its obligation to demonstrate a defendant's predisposition.

The State attempts to analogize the facts in this case to the facts in *Shelton*. There, police officers placed a remote-control deer decoy in a field where it would be visible to persons driving past. Then, when Denver and Kenneth Shelton drove down the road, the officers used the remote control to move the deer's head. The Shelton brothers stopped their vehicle on the road, pointed a shotgun out the window, and fired two shots at the deer decoy. For that act, the State charged them with Class C misdemeanor road hunting. We held the placement of the deer decoy in the field was not sufficient to demonstrate inducement that would entitle the Sheltons to a jury instruction on entrapment, because the police had merely provided an opportunity for the Sheltons to shoot at a deer. *Id*. at 502.

We cannot, however, hold that the facts herein are analogous to those in *Shelton*. Detective McLemore was not merely standing on the side of the road dressed like a prostitute. She was the first to mention money, a sex act, and the possibility of exchanging the two. For *Shelton* to be analogous, the deer decoy would have needed a sign or recording announcing to passers-by that they were welcome to shoot at the deer for twenty dollars. As the deer decoy contained no such explicit invitation to commit criminal behavior, we decline the State's invitation to follow *Shelton*. Detective McLemore's question and statements were sufficient to induce Griesemer to commit patronizing a prostitute. *See Ferge*, 764 N.E.2d at 271 (record "clearly established police inducement" where officer initiated conversation regarding whether "Ferge would be interested in fellatio for payment"); c*f. Espinoza v. State*,

859 N.E.2d 375, 385-86 (Ind. Ct. App. 2006) (where police intercepted package containing marijuana and cocaine that was addressed for delivery via UPS to Espinoza, and police simply delivered the package instead of UPS, police did not induce Espinoza's criminal behavior or implant a criminal design in his mind).

Therefore, to rebut Griesemer's entrapment defense, the State needed to prove Griesemer was predisposed to commit patronizing a prostitute. *See Price v. State*, 397 N.E.2d 1043, 1046 (Ind. Ct. App. 1979) ("Insomuch as the idea of the charged illegal conduct originated with the police, the State has the burden of proving a predisposition on the part of defendant to engage in the illegal activities."). "Whether a defendant was predisposed to commit the crime charged is a question for the trier of fact," and the State must prove that predisposition beyond a reasonable doubt using "evidence subject to the normal rules of admissibility." *Dockery*, 644 N.E.2d at 577. Several factors may be relevant to determining whether a defendant was predisposed to commit a crime:

> (1) the character or reputation of the defendant; (2) whether the suggestion of criminal activity was originally made by the government; (3) whether the defendant was engaged in criminal activity for a profit; (4) whether the defendant evidenced reluctance to commit the offense, overcome by government persuasion; and (5) the nature of the inducement or persuasion offered by the government.

*Kats v. State*, 559 N.E.2d 348, 353 (Ind. Ct. App. 1990), *trans. denied*. Additional facts that suggest criminal predisposition include familiarity with jargon and prices, engaging in multiple transactions, or arranging future transactions. *Riley v. State*, 711 N.E.2d 489, 494 (Ind. 1999).

7

Griesemer notes he stopped at a stop sign and offered the detective a ride, and then the detective initiated discussion of sexual matters. Furthermore, Griesemer asserts, the State presented no evidence that he was familiar with the jargon[4] or price of prostitutes, that he tried to engage in multiple transactions or arrange future transactions, that he was known to patronize prostitutes, or that he exhibited any other behavior that suggests predisposition to patronize prostitutes. Thus, Griesemer claims, we should reverse his conviction. *See Ferge*, 764 N.E.2d 271-72 (reversing conviction of patronizing a prostitute because State did not show Ferge's predisposition to commit the crime the police induced).

The State argues *Ferge* should not control the outcome herein because "[u]nlike Ferge, there was no evidence that [Griesemer] was in the habit of offering rides to strange women." (Appellee's Br. at 8-9.) However, Griesemer did not have any burden to prove he lacked predisposition, and we decline the State's invitation to impose that burden on him. *See Baird*, 446 N.E.2d 342 (reversing conviction of furnishing alcohol to a minor because police use of 19-year-old to purchase the beer from the store where Baird was the clerk amounted to police initiation of the criminal activity, and State did not offer evidence that Baird was predisposed to sell alcohol to minors). We may not affirm Griesemer's conviction on the ground that he did not produce evidence of his motivation for offering Detective McLemore a ride.

---

[4] Detective McLemore testified she told Griesemer that she could "do 'head' which is street terminology for fellatio." (Tr. at 7.) However, we decline to hold that widely-know slang term for fellatio qualifies as the kind of criminal "jargon" suggesting a person is predisposed to patronize prostitutes. *Cf. Henrichs v. State*, 455 N.E.2d 599, 601 (Ind. 1983) (appellant "used and understood terminology almost exclusively practiced in the illegal drug traffic trade"); *Young v. State*, 620 N.E.2d 21, 25 (Ind. Ct. App. 1993) (appellant used "eight balls" and "sixteenths" for quantities of cocaine and knew the prices for each), *trans. denied*.

Finally, at oral argument, the State suggested Griesemer's nodding yes to agree to fellatio and nodding toward the seat for Detective McLemore to get into the car demonstrate he was predisposed to commit patronizing a prostitute because "this is everything we would expect in this kind of encounter." (Oral Argument Video at 18:06-18:09.) Although the State does not need to demonstrate "prior acts to show 'predisposition,'" *Gilley v. State*, 535 N.E.2d 130, 132 (Ind. 1989), the State cannot use the very facts necessary to demonstrate patronizing a prostitute to demonstrate predisposition to commit that same crime, or the State effectively will have avoided its burden to demonstrate predisposition. *See Voirol v. State*, 412 N.E.2d 861, 864 (Ind. Ct. App. 1980) ("The fact that defendant sold to a person he had never seen before does not support an inference of eagerness or propensity. Otherwise any time one has been entrapped and a sale has occurred, the fact of sale would show a propensity or a predisposition."). We decline to hold that agreeing to commit a crime induced by the State demonstrates the predisposition necessary to rebut the defense of entrapment. *See Dockery*, 644 N.E.2d at 577 (if State does not prove predisposition, then entrapment is established as a matter of law); *Baird*, 446 N.E.2d at 344 (reversing conviction of entrapment where State "presented absolutely no evidence of defendant's predisposition to commit the crime").

Rather, to demonstrate predisposition, the State needed to produce evidence similar to that which we have found sufficient in prior decisions, such as providing marijuana on a prior occasion and offering to sell crack cocaine to the officer in the future, *Gray v. State*, 579 N.E.2d 605 (Ind. 1991), *reh'g denied*; selling drugs to obtain a "pinch" for himself, knowing

9

prices and sources, and offering to sell in the future, *Henrichs v. State*, 455 N.E.2d 599, 601 (Ind. 1983); using drug jargon for cocaine packaging ("bricked up") and offering to supply additional cocaine in the future, *Turner v. State*, 993 N.E.2d 640, 644 (Ind. Ct. App. 2013), *trans. denied*; negotiating for a better price and urging the officer to engage in more criminal behavior, *Salama v. State*, 690 N.E.2d 762 (Ind. Ct. App. 1998) (charged with welfare fraud), *trans. denied*; being the first to mention the crime, discussing payment, and providing a shotgun, *Lahr*, 640 N.E.2d at 760; and knowing terminology and pricing, having familiarity with suppliers, wanting some for his own use, *Young v. State*, 620 N.E.2d 21, 25 (Ind. Ct. App. 1993), *trans. denied*.  As the State did not present any evidence that could demonstrate Griesemer was predisposed to patronize a prostitute,[5] it did not rebut his defense of entrapment. *See*, *e.g.*, *Baird*, 446 N.E.2d at 344 (reversing conviction where criminal activity was initiated by police and State presented no evidence of defendant's predisposition).

Because the evidence most favorable to the State permits an inference only that the police induced Griesemer's criminal behavior, but does not contain any evidence permitting an inference that Griesemer was predisposed to commit patronizing a prostitute, entrapment was established as a matter of law, and we must reverse Griesemer's conviction.

Reversed.

---

[5] The only additional fact to which the State can point is the fact that Griesemer had turned into a parking lot that would provide access to an alley through which Griesemer could circle back around to the designated meeting place. The State asserts this fact distinguishes this case from *Ferge*, in which the defendant had driven nine blocks from the undercover officer before he was stopped by police.  *See Ferge*, 764 N.E.2d at 272. However, the fact remains that, when arrested, Griesemer was in the parking lot of a convenience store and, from Detective McLemore's description, *at least* two blocks from the designated meeting place.  We decline to hold Griesemer's presence there, at least two blocks from the meeting place and in the parking lot of a convenience store, demonstrated his predisposition to commit this crime.

BAKER, J., concurs.

VAIDIK, C.J., dissents with separate opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| KENNETH GRIESEMER, | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 49A04-1308-CR-382 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Defendant. | ) | |
| | ) | |

**VAIDIK, Chief Judge, dissenting.**

I respectfully disagree with the majority's view that there was not sufficient evidence to rebut Griesemer's entrapment defense. Specifically, I believe that the State proved that Griesemer was predisposed to commit the offense because the State established that Griesemer was not reluctant to commit the offense. Therefore, I would affirm Griesemer's conviction for Class A misdemeanor patronizing a prostitute.

Griesemer was driving his car and noticed Tabitha McLemore, an undercover police officer who was posing as a prostitute, near the corner of Washington and Ewing Streets on the east side of Indianapolis. A few minutes later, he drove by again and asked her if she

needed a ride. Tr. p. 6. She declined and explained that she was "trying to make some money." *Id.* at 7. Griesemer then nodded his head toward his passenger seat, indicating that Officer McLemore should get into his car. *Id.* She then asked Griesemer how much money he had, and he responded by again nodding his head toward the passenger seat. She repeated the question, and he responded that he had twenty dollars. *Id.* Officer McLemore told him that she could do "head" for that price.[6] Griesemer shook his head yes and again nodded for her to get into the passenger seat of his car. *Id.* Officer McLemore then asked Griesemer to pick her up "down the street." *Id.* at 8. He nodded in agreement.[7] Griesemer turned right onto Washington Street from northbound Ewing and then turned right again at the next block pulling into the parking lot that he "turned in originally." *Id.* at 9. In the parking lot, he was arrested by uniformed police officers. After a bench trial, the trial court found him guilty of Class A misdemeanor patronizing a prostitute.

Griesemer asserted the defense of entrapment at trial. Entrapment is a valid defense if (1) the prohibited conduct was the result of a police officer using persuasion or other means likely to cause the person to commit a crime and (2) the person was not predisposed to commit the offense. Ind. Code § 35-41-3-9. This Court has stated that once a defendant has proved that he was induced to commit the offense, the burden of proof shifts to the State either to disprove beyond a reasonable doubt that the defendant was induced to commit the crime or to prove beyond a reasonable doubt that the defendant was predisposed to commit

---

[6] "Head" is a street term for fellatio.

the crime. *Scott v. State*, 772 N.E.2d 473, 474-75 (Ind. Ct. App. 2002), *trans. denied*.

I agree with the majority that Officer McLemore induced Griesemer to commit the offense. However, I disagree with the majority that the State did not prove that Griesemer was predisposed to commit the offense.

A defendant's predisposition to commit a crime is a question of fact, and we use the same standard that is used to address sufficiency claims. *Dockery v. State*, 644 N.E.2d 573, 578 (Ind. 1994). We will uphold a conviction if the record is supported with substantial evidence of probative value from which a reasonable trier of fact could infer that the appellant was predisposed to commit the offense. *Id.* "Circumstantial evidence may be sufficient to establish predisposition." *Voirol v. State*, 412 N.E.2d 861, 863 (Ind. Ct. App. 1980).

Several factors may be relevant in determining whether a defendant was predisposed to commit a crime, including:

> (1) the character or reputation of the defendant; (2) whether the suggestion of criminal activity was originally made by the government; (3) whether the defendant was engaged in criminal activity for a profit; (4) whether the defendant evidenced reluctance to commit the offense, overcome by government persuasion; and (5) the nature of the inducement or persuasion offered by the government.

*Kats v. State*, 559 N.E.2d 348, 353 (Ind. Ct. App. 1990), *trans. denied*. We adopted these factors from the Seventh Circuit in *United States v. Fusko*, 869 F.2d 1048, 1052 (7th Cir. 1989). In explaining the factors, the *Fusko* Court stated that "'the most important element of the equation is whether the defendant was reluctant to commit the offense.'" *Id.* (quoting

---

[7] According to Officer McLemore, to pick her up, "he'd have to turn [onto] Washington Street and go around

14

*United States v. Thoma*, 726 F.2d 1191, 1197 (7th Cir. 1984)). The *Fusko* Court also explained that reluctance is established when "'evidence demonstrated some degree of Government involvement in coaxing the defendant into committing the offense, and the defendant, for whatever reason, was initially reluctant to become involved . . . .'" *Id.* (quoting *Thoma*, 726 F.2d at 1196).

The majority asserts that the State cannot use the very facts necessary to commit a crime to demonstrate that a defendant was predisposed to commit that crime. Slip. op. at 9. I agree that something more than the commission of the crime by itself is necessary to prove that a defendant was predisposed to commit the offense. *See Voirol*, 412 N.E.2d at 863 (holding that the mere fact that a defendant was willing to sell drugs to a person he did not know could not be construed as evidence that the defendant was "willing and eager" to sell drugs). But based on the *Kats* factors, the State does not need to prove that the defendant is "willing and eager" to commit the crime. Instead, the State must only establish that the defendant was not reluctant to commit the crime.

The evidence presented by the State did exactly that. The evidence most favorable to the judgment shows that Griesemer nodded his head toward the passenger seat after Officer McLemore told him she was trying to make some money. She then asked him how much money he had, and he responded that he had twenty dollars. Although Officer McLemore was the first to mention the idea of paying money for a sexual act, Griesemer was the first to mention the *amount* of money. Had he been initially reluctant to commit the crime, he would

the loop which is what he did originally when he came back to speak with [Officer McLemore]." Tr. p. 8.

not have immediately volunteered the amount of money he had in his car to an unknown woman standing outside his car window. After the agreement was consummated, she told him to pick her up down the street. Griesemer then drove into the parking lot he had originally turned around in, presumably to turn around and pick her up down the street. I believe that the evidence most favorable to the judgment is sufficient to establish that Griesemer was not reluctant to commit Class A misdemeanor patronizing a prostitute.

I also find this case distinguishable from *Ferge v. State*, 764 N.E.2d 268 (Ind. Ct. App. 2002). In that case, Ferge stopped at a corner and asked the undercover police officer, who was posing as a prostitute, if she needed a ride. She said "maybe" and then asked if he was "looking for a little more." *Id.* at 270. Ferge responded only, "yes, get in," to each of her questions. But more pertinently, after the officer told Ferge to meet her in an alley behind the building, Ferge did not circle the block to return to the alley; instead, he drove away from the alley until he was stopped by the police approximately seven blocks away. *Id.* Unlike in *Ferge*, Griesemer did drive back to the parking lot he had turned into originally.

While lack of reluctance is only one of the *Kats* factors, it is the most important one. Here, Griesemer exhibited no reluctance to commit the offense, nor is there any evidence that the government used persuasion to overcome any reluctance Griesemer may have had.

Finally, I respectfully disagree with the majority's suggestion that in order to demonstrate predisposition, the State needed to produce evidence of Griesemer patronizing prostitutes in the past or being familiar with the jargon of the prostitution business.

When looking at the evidence most favorable to the judgment, I believe the State

16

proved that Griesemer was predisposed to commit the offense. Therefore, I would find that there was sufficient evidence to rebut Griesemer's entrapment defense and would affirm his conviction for Class A misdemeanor patronizing a prostitute.