VAIDIK, Chief Judge,
dissenting.
I respectfully disagree with the majority’s view that there was not sufficient evidence to rebut Griesemer’s entrapment defense. Specifically, I believe that the State proved that Griesemer was predisposed to commit the offense because the State established that Griesemer was not reluctant to commit the offense. Therefore, I would affirm Griesemer’s conviction for Class A misdemeanor patronizing a prostitute.
Griesemer was driving his car and noticed Tabitha McLemore, an undercover police officer who was posing as a prostitute, near the corner of Washington and Ewing Streets on the east side of Indianapolis. A few minutes later, he drove by again and asked her if she needed a ride. Tr. p. 6. She declined and explained that she was “trying to make some money.” Id. at 7. Griesemer then nodded his head toward his passenger seat, indicating that Officer McLemore should get into his car. Id. She then asked Griesemer how much money he had, and he responded by again nodding his head toward the passenger seat. She repeated the question, and he responded that he had twenty dollars. Id. Officer McLemore told him that she could do “head” for that price.[6] Griesemer shook his head yes and again nodded for her to get into the passenger seat of his car. Id. Officer McLemore then asked Griesemer to pick her up “down the street.” Id. at 8. He nodded in agreement.[7] Griesemer turned right onto Washington Street from northbound Ewing and then turned right again at the next block pulling into the parking lot that he “turned in originally.” Id. at 9. In the parking lot, he was arrested by uniformed police officers. After a bench trial, the trial court found him guilty of Class A misdemeanor patronizing a prostitute.
*1022 Griesemer asserted the defense of entrapment at trial. Entrapment is a valid defense if (1) the prohibited conduct was the result of a police officer using persuasion or other means likely to cause the person to commit a crime and (2) the person was not predisposed to commit the offense. Ind.Code § 35-41-3-9. This Court has stated that once a defendant has proved that he was induced to commit the offense, the burden of proof shifts to the State either to disprove beyond a reasonable doubt that the defendant was induced to commit the crime or to prove beyond a reasonable doubt that the defendant was predisposed to commit the crime. Scott v. State, 772 N.E.2d 473, 474-75 (Ind.Ct.App.2002), tram, denied.
I agree with the majority that Officer McLemore induced Griesemer to commit the offense. However, I disagree with the majority that the State did not prove that Griesemer was predisposed to commit the offense.
A defendant’s predisposition to commit a crime is a question of fact, and we use the same standard that is used to address sufficiency claims. Dockery v. State, 644 N.E.2d 573, 578 (Ind.1994). We will uphold a conviction if the record is supported with substantial evidence of probative value from which a reasonable trier of fact could infer that the appellant was predisposed to commit the offense. Id. “Circumstantial evidence may be sufficient to establish predisposition.” Voirol v. State, 412 N.E.2d 861, 863 (Ind.Ct.App.1980).
Several factors may be relevant in determining whether a defendant was predisposed to commit a crime, including:
(1) the character or reputation of the defendant; (2) whether the suggestion of criminal activity was originally made by the government; (3) whether the defendant was engaged in criminal activity for a profit; (4) whether the defendant evidenced reluctance to commit the offense, overcome by government persuasion; and (5) the nature of the inducement or persuasion offered by the government.
Kats v. State, 559 N.E.2d 348, 353 (Ind.Ct.App.1990), trans. denied. We adopted these factors from the Seventh Circuit in United States v. Fusko, 869 F.2d 1048, 1052 (7th Cir.1989). In explaining the factors, the Fusko Court stated that “ ‘the most important element of the equation is whether the defendant was reluctant to commit the offense.’ ” Id. (quoting United States v. Thoma, 726 F.2d 1191, 1197 (7th Cir.1984)). The Fusko Court also explained that reluctance is established when “ ‘evidence demonstrated some degree of Government involvement in coaxing the defendant into committing the offense, and the defendant, for whatever reason, was initially reluctant to become involved _’” Id. (quoting Thoma, 726 F.2d at 1196).
The majority asserts that the State cannot use the very facts necessary to commit a crime to demonstrate that a defendant was predisposed to commit that crime. Op. at 1020. I agree that something more than the commission of the crime by itself is necessary to prove that a defendant was predisposed to commit the offense. See Voirol, 412 N.E.2d at 863 (holding that the mere fact that a defendant was willing to sell drugs to a person he did not know could not be construed as evidence that the defendant was “willing and eager” to sell drugs). But based on the Kats factors, the State does not need to prove that the defendant is “willing and eager” to commit the crime. Instead, the State must only establish that the defendant was not reluctant to commit the crime.
The evidence presented by the State did exactly that. The evidence most favorable to the judgment shows that Griesemer *1023 nodded his head toward the passenger seat after Officer McLemore told him she was trying to make some money. She then asked him how much money he had, and he responded that he had twenty dollars. Although Officer McLemore was the first to mention the idea of paying money for a sexual act, Griesemer was the first to mention the amount of money. Had he been initially reluctant to commit the crime, he would not have immediately volunteered the amount of money he had in his car to an unknown woman standing outside his car window. After the agreement was consummated, she told him to pick her up down the street. Griesemer then drove into the parking lot he had originally turned around in, presumably to turn around and pick her up down the street. I believe that the evidence most favorable to the judgment is sufficient to establish that Griesemer was not reluctant to commit Class A misdemeanor patronizing a prostitute.
I also find this case distinguishable from Ferge v. State, 764 N.E.2d 268 (Ind.Ct.App.2002). In that case, Ferge stopped at a corner and asked the undercover police officer, who was posing as a prostitute, if she needed a ride. She said “maybe” and then asked if he was “looking for a little more.” Id. at 270. Ferge responded only, “yes, get in,” to each of her questions. But more pertinently, after the officer told Ferge to meet her in an alley behind the building, Ferge did not circle the block to return to the alley; instead, he drove away from the alley until he was stopped by the police approximately seven blocks away. Id. Unlike in Ferge, Griesemer did drive back to the parking lot he had turned into originally.
While lack of reluctance is only one of the Kats factors, it is the most important one. Here, Griesemer exhibited no reluctance to commit the offense, nor is there any evidence that the government used persuasion to overcome any reluctance Griesemer may have had.
Finally, I respectfully disagree with the majority’s suggestion that in order to demonstrate predisposition, the State needed to produce evidence of Griesemer patronizing prostitutes in the past or being familiar with the jargon of the prostitution business.
When looking at the evidence most favorable to the judgment, I believe the State proved that Griesemer was predisposed to commit the offense. Therefore, I would find that there was sufficient evidence to rebut Griesemer’s entrapment defense and would affirm his conviction for Class A misdemeanor patronizing a prostitute.

. “Head" is a street term for fellatio.

. According to Officer McLemore, to pick her up, "he'd have to turn [onto] Washington Street and go around the loop which is what he did originally when he came back to speak with [Officer McLemore].” Tr. p. 8.