ATTORNEYS FOR APPELLANT
Daniel L. Moore
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Gregory F. Zoeller
Attorney General of Indiana

Larry D. Allen
Stephen R. Creason
Richard C. Webster
Deputy Attorneys General
Indianapolis, Indiana



FILED
Mar 05 2015, 10:43 am
CLERK
of the supreme court,
court of appeals and
tax court

# In the
# Indiana Supreme Court

No. 49S04-1408-CR-564

KENNETH GRIESEMER,

*Appellant (Defendant below),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff below).*

Appeal from the Marion Superior Court, No. 49F10-1208-CM-56547
The Honorable Linda E. Brown, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 49A04-1308-CR-382

**March 5, 2015**

**Massa, Justice.**

Kenneth Griesemer appeals his conviction for patronizing a prostitute, arguing the State failed to rebut his defense of entrapment. We are asked to decide whether the State disproved one element of that defense—either showing there was no police inducement or showing Griesemer

was predisposed to commit the crime—beyond a reasonable doubt. Because we find the undercover detective merely presented Griesemer with an opportunity to patronize a prostitute, we find no inducement and therefore no entrapment. We affirm.

## Facts and Procedural History

On a summer afternoon on the east side of Indianapolis, Detective Tabatha McLemore was posing as a prostitute on a corner, when she noticed Griesemer driving past and staring at her. He looped around the block and returned a few minutes later, stopping near her just before a stop sign. Through his open car window, Griesemer asked Detective McLemore if she needed a ride. Detective McLemore declined, saying she "was trying to make some money." Tr. at 7. Griesemer nodded his head toward his passenger seat, which Detective McLemore understood to be an invitation for her to get in his car. She then asked him how much money he had, and Griesemer again nodded toward his passenger seat. When she asked him about money a second time, he told her he had twenty dollars. Detective McLemore said she could "do head" for that amount, and Griesemer nodded his head, yes, and for a third time nodded toward his passenger seat. Tr. at 7–8. Instead of getting in his car, however, she told him to pick her up just down the street. He nodded, yes, and proceeded along the same route he had taken when he initially saw Detective McLemore. A police vehicle stopped Griesemer; he was arrested and charged with patronizing a prostitute, a Class A misdemeanor.[1] At a bench trial, the court found Griesemer guilty as charged and sentenced him to 180 days with 176 days suspended.

---

[1] "A person who knowingly or intentionally pays, or offers or agrees to pay money or other property to another person . . . on the understanding that the other person will engage in . . . deviate sexual conduct with the person . . . commits patronizing a prostitute." Ind. Code § 35-45-4-3 (2008). Deviate sexual

2

Griesemer appealed his conviction, arguing he raised the entrapment defense by showing police inducement—it was Detective McLemore who first mentioned money, sex, and the possibility of trading one for the other—and the State failed to offer any evidence of Griesemer's predisposition to commit the offense. A majority of our Court of Appeals agreed, and it reversed Griesemer's conviction. Griesemer v. State, 10 N.E.3d 1015, 1021 (Ind. Ct. App. 2014). Chief Judge Vaidik dissented, relying upon United States v. Fusko, 869 F.2d 1048, 1052 (7th Cir. 1989), which explained, "the most important element of the equation is whether the defendant was reluctant to commit the offense." Griesemer, 10 N.E.3d at 1022 (Vaidik, C.J., dissenting). She found the State proved predisposition by showing Griesemer's lack of reluctance to commit the offense: Griesemer nodded toward his passenger seat in response to Detective McLemore's saying she was trying to make money; Griesemer was the first to mention a specific *amount* of money; and Griesemer promptly drove down the street just as he had done before, presumably to pick up Detective McLemore. Id. at 1022–23.

We granted transfer, thereby vacating the opinion below. Griesemer v. State, 15 N.E.3d 588 (Ind. 2014) (table); Ind. Appellate Rule 58(A).

## Standard of Review

"We review a claim of entrapment using the same standard that applies to other challenges to the sufficiency of evidence." Dockery v. State, 644 N.E.2d 573, 578 (Ind. 1994). We neither reweigh the evidence nor reassess the credibility of witnesses. Id. Instead, we look to the probative

conduct includes acts that involve "a sex organ of one person and the mouth or anus of another person." Ind. Code § 35-31.5-2-94.

3

evidence supporting the verdict and the reasonable inferences drawn from that evidence.  <u>Id.</u>  If we find a reasonable trier of fact could infer guilt beyond a reasonable doubt, we will affirm the conviction.  <u>Id.</u>

**Griesemer's Entrapment Defense Fails Because He Was Not Induced.**

The government may use undercover agents to enforce the law.  <u>Sorrells v. United States</u>, 287 U.S. 435, 441 (1932) ("Artifice and stratagem may be employed to catch those engaged in criminal enterprises.").  Indeed, undercover agents can be invaluable in the prevention, detection, and prosecution of crime, and "it is the duty of conscientious and efficient law enforcement officers to make such efforts."  <u>Gray v. State</u>, 249 Ind. 629, 632, 231 N.E.2d 793, 795 (1967).  But their tactics must be measured; we do not tolerate government activity that lures an otherwise law-abiding citizen to engage in crime.  <u>Id.</u>  After all, the job of law enforcement is to catch established criminals, not manufacture new ones.  Our entrapment defense aims to sort the two.

Entrapment in Indiana is statutorily defined:

> (a) It is a defense that:
>
>> (1) the prohibited conduct of the person was the product of a law enforcement officer, or his agent, using persuasion or other means likely to cause the person to engage in the conduct; and
>>
>> (2) the person was not predisposed to commit the offense.
>
> (b) Conduct merely affording a person an opportunity to commit the offense does not constitute entrapment.

Ind. Code § 35-41-3-9 (2008).  A defendant does not need to formally plead the entrapment defense; rather, it is raised, often on cross-examination of the State's witnesses, by affirmatively showing the police were involved in the criminal activity and expressing an intent to rely on the

4

defense.  Wallace v. State, 498 N.E.2d 961, 964 (Ind. 1986); Fearrin v. State, 551 N.E.2d 472, 473 (Ind. Ct. App. 1990).  Officers are involved in the criminal activity only if they "directly participate" in it.  Shelton v. State, 679 N.E.2d 499, 502 (Ind. Ct. App. 1997) (finding, where officers merely placed deer decoy in field, they did not "directly participate in the criminal activity of road hunting," and the defendants thus failed to raise the entrapment defense).  The State then has the opportunity for rebuttal, its burden being to disprove one of the statutory elements beyond a reasonable doubt.  Riley v. State, 711 N.E.2d 489, 494 (Ind. 1999); McGowan v. State, 674 N.E.2d 174, 175 (Ind. 1996) (holding because entrapment is established by the existence of two elements, it is defeated by the nonexistence of one).  There is thus no entrapment if the State shows either (1) there was no police inducement, or (2) the defendant was predisposed to commit the crime.  Riley, 711 N.E.2d at 494.

To rebut the inducement element, the State must prove police efforts did not produce the defendant's prohibited conduct, McGowan, 674 N.E.2d at 175, because those efforts lacked "a persuasive or other force."  Williams v. State, 274 Ind. 578, 584, 412 N.E.2d 1211, 1215 (1980).  In Williams, for example, the defendant was upset over an article about him, and he asked an undercover officer if he would perform an "extra service."  Id. at 580, 412 N.E.2d at 1213.  When the officer asked what he meant by that, Williams said he wanted to stop the malicious slander.  Id., 412 N.E.2d at 1213. The officer then suggested that breaking the journalist's arms and legs wouldn't be enough to shut him up.  Id., 412 N.E.2d at 1213.  Williams again asked for an "extra service," this time adding: "I want [the journalist] killed.  I never want to see or hear of him again."  Id., 412 N.E.2d at 1213.  After hiring another officer as a contract killer, Williams was convicted of conspiracy to commit murder.  Id. at 580–81, 412 N.E.2d at 1213.  Asserting entrapment, Williams argued the officer's statement about breaking arms and legs implanted the criminal plan in his mind.  Id. at 583–84, 412 N.E.2d at 1215.  We disagreed for two reasons:  (1) Williams used the phrase "extra service," apparently in reference to killing the journalist, *before* the officer's comment, and (2) the officer's comment lacked a persuasive force.  Id. at 584, 412 N.E.2d at 1215. "It was not a question calling for an answer, but a flat logical assertion."  Id., 412 N.E.2d at 1215.

5

A trier of fact could reasonably find the criminal plan was a product of Williams's own "personal anger and frustration," not police efforts. Id. at 583, 412 N.E.2d at 1215.

We reached the opposite conclusion in Albaugh v. State, 721 N.E.2d 1233 (Ind. 1999). On a snowy night, Albaugh's truck broke down a quarter mile from his house. Id. at 1233. He and his girlfriend left the truck, walked home, and began drinking whiskey. Id. A few hours later, two deputies pounded on their door and said the truck needed to be moved out of the road before it became a hazard. Id. at 1234. Although Albaugh said he would do so in the morning, the deputy insisted, "you've got to move it and you've got to move it now." Id. at 1237. Shortly after Albaugh started his truck, the deputies arrested him, and he was convicted of driving while intoxicated. Id. We found the State failed to establish Albaugh's criminal conduct was not the product of the deputy's explicit demand to move the car, so Albaugh was entrapped. Id.

Here, neither side disputes the defense was adequately raised: Detective McLemore was directly involved in the criminal act of patronizing a prostitute, which requires an "understanding" between two people, she and Griesemer. Ind. Code § 35-45-4-3. The burden of proving either no police inducement or predisposition to commit the crime thus shifted to the State.

We conclude the State presented sufficient evidence for a trier of fact to reasonably determine Detective McLemore's policing efforts did not produce Griesemer's criminal conduct. The evidence most favorable to the verdict suggests Griesemer stared at Detective McLemore from the road before turning around, he stopped his car near her to initiate their conversation, and he twice nodded his head to invite her into his car, all *before* she mentioned the opportunity to exchange money for a sexual act. And we find Detective McLemore's abruptly and clinically stating "I could do head," Tr. at 7, is more like the "flat logical assertion" of Williams, 274 Ind. at 584, 412 N.E.2d at 1215, than the "explicit directive or order" of Albaugh, 721 N.E.2d at 1237. She did not exert a persuasive or other force over Griesemer; instead, she merely afforded him "an opportunity to commit the offense," which the statute expressly declares "does not constitute

6

entrapment." Ind. Code § 35-41-3-9(b). That the crime itself may be tempting, without more, is not inducement. Indeed, if we were to find entrapment on these facts, we would effectively put an end to prostitution stings. We are not willing to so limit the activity of undercover officers to the detriment of safety and quality of life in many neighborhoods.

Because a reasonable trier of fact could have found the State proved, beyond a reasonable doubt, the police did not induce Griesemer, his entrapment defense fails. We need not address the question of his predisposition to commit the crime.

## Conclusion

For the reasons set forth in this opinion, we affirm the trial court.

Rush, C.J., David, J., concur.
Rucker, J., dissents with separate opinion in which Dickson, J., concurs.

7

**Rucker, Justice, dissenting.**

Although citing portions of the dissenting opinion authored by Chief Judge Vaidik, my colleagues here apparently distance themselves from the dissent's actual conclusion, namely: Griesemer was "predisposed" to commit the offense. See Griesemer v. State, 10 N.E.3d 1015, 1021 (Ind. Ct. App. 2014) (Vaidik, C.J., dissenting). Both the Court of Appeals majority as well as the dissent concluded that Officer McLemore induced Griesemer to commit the offense. See Id. at 1019 (Majority opinion, "Detective McLemore's question and statements were sufficient to induce Griesemer to commit patronizing a prostitute."); Id. at 1022 (Dissenting opinion, "I agree with the majority that Officer McLemore induced Griesemer to commit the offense."). The debate was joined over the question of whether Griesemer was predisposed. Here, my colleagues do not reach that issue concluding instead there was no inducement. I disagree. After Griesemer offered Detective McLemore a ride, she was the first to mention money, the first to mention performance of a sexual act, and the first to mention trading a sexual act for money. As the Court of Appeals correctly observed, under nearly identical facts a defendant was found to have "'clearly established police inducement.'" Id. at 1018 (quoting Ferge v. State, 764 N.E.2d 268, 271 (Ind. Ct. App. 2002) (declaring "[i]t is undisputed that [the officer] initiated the conversation regarding whether Ferge would be interested in fellatio for payment")).

Because Griesemer clearly established inducement, "the burden shift[ed] to the State to show the defendant's predisposition to commit the crime. . . . The standard by which the State must prove the defendant's predisposition is beyond a reasonable doubt. . . . If the defendant shows police inducement and the State fails to show predisposition on the part of the defendant to commit the crime charged, entrapment is established as a matter of law." Dockery v. State, 644 N.E.2d 573, 577 (Ind. 1994). Here, my colleagues' reticence to address the issue speaks loudly and strongly suggests the State did not carry its burden of proving predisposition beyond a reasonable doubt. In my view the Court of Appeals majority got it exactly right: "Because the evidence most favorable to the State permits an inference only that the police induced Griesemer's criminal behavior, but does not contain any evidence permitting an inference that Griesemer was

predisposed to commit patronizing a prostitute, entrapment was established as a matter of law . . . ." Griesemer, 10 N.E.3d at 1021.  I therefore respectfully dissent and would reverse the judgment of the trial court.

Dickson, J., concurs.