## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Aug 25 2015, 9:40 am
CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

John Jacob Warrum
Mt. Vernon, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Richard C. Webster
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Darrell Mattingly,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | August 25, 2015<br><br>Court of Appeals Case No.<br>65A01-1501-CR-29<br><br>Appeal from the Posey Superior Court<br><br>The Honorable S. Brent Almon, Judge<br><br>Trial Court Cause No.<br>65D01-1404-FA-99 |

**Bailey, Judge.**

# Case Summary

[1] Darrell Mattingly ("Mattingly") was convicted of three counts of Dealing in Methamphetamine, as Class A felonies,[1] and one count of Maintaining a Common Nuisance, as a Class D felony.[2] He now appeals, raising a single issue for our review: whether the State introduced evidence sufficient to rebut his affirmative defense of entrapment.

[2] We affirm.

# Facts and Procedural History

[3] Mattingly had been friends with Rick Bowman ("Bowman") during childhood, but the two lost touch after high school. Sometime in 2011, however, Mattingly and Bowman encountered one another in a tavern in Mount Vernon. The two men renewed their friendship, and by this time, both men had become involved in using methamphetamine. Bowman would occasionally stop by Mattingly's home unannounced, and the two men would share the drugs.

[4] During the course of their friendship, Bowman had provided Mattingly with materials for the manufacture of methamphetamine. Bowman witnessed

---

[1] Ind. Code § 35-48-4-1.1. The Indiana General Assembly enacted substantial revisions to our state's criminal statutes, effective July 1, 2014. We refer throughout to the substantive provisions of our statutes in effect at the time of Mattingly's offenses.

[2] I.C. § 35-48-4-13.

Mattingly manufacture the drug using the "shake and bake" or "one pot" method, and had also seen Mattingly fail to do so successfully.[3]

[5] In 2012, Bowman became a confidential informant with the Posey County Narcotics Task Force and the Federal Bureau of Investigation. As part of this work, Bowman agreed to identify individuals he knew to be involved in the manufacture and distribution of methamphetamine. Mattingly was one of these individuals.

[6] On February 8, 2013, Bowman contacted Mattingly to inquire about obtaining methamphetamine. Mattingly told Bowman that he did not have money to purchase all the supplies, and stated specifically that he needed pseudoephedrine pills and lithium batteries. Bowman informed his handler, Kenneth Rose ("Rose"), an investigator with the Posey County Prosecutor's Office and head of the Posey County Narcotics Task Force, that he had arranged for Mattingly to manufacture methamphetamine. Rose provided Bowman with the pseudoephedrine pills and lithium batteries Mattingly required.

[7] On February 9, 2013, in the context of a controlled buy monitored by Rose and other law enforcement officers, Bowman drove to Mattingly's home in Mount Vernon and provided Mattingly two packages of pseudoephedrine pills and

---

[3] The "shake and bake" or "one pot" method involves combining a number of chemicals, including ground-up pseudoephedrine tablets and strips of lithium pulled from lithium-containing batteries, into a single vessel. Tr. at 247. The vessel is shaken for a portion of the methamphetamine production process.

some lithium batteries. Mattingly began the manufacturing process and, late in the day, contacted Bowman to inform him that the drugs were ready. Bowman drove back to Mattingly's home and retrieved a large portion of the methamphetamine. After the transaction was complete, Bowman turned the methamphetamine over to Rose. Bowman had been provided with a recording device, and Bowman used the device to record audio and video of the portions of the transaction when he was present in Mattingly's home.

[8] On March 1, 2013, again within the context of a controlled buy, Rose provided Bowman with materials for the manufacture of methamphetamine, which Bowman again gave to Mattingly. On this occasion, Bowman provided four packages of pills, and a larger amount of methamphetamine was produced by Mattingly. Mattingly provided a large portion of the drugs to Bowman, and told Bowman that the product was of a higher quality than in the previous transaction because Mattingly had changed the process he used to dry the drug after the manufacturing process was complete.

[9] After the conclusion of an investigation, on April 3, 2014, the State issued a warrant for Mattingly's arrest. On April 7, 2014, the State filed a charging information, which charged Mattingly with three counts of Dealing in Methamphetamine and one count of Maintaining a Common Nuisance.

[10] A jury trial was conducted from November 12 to November 14, 2014. During the trial, Mattingly pursued an affirmative defense of entrapment, and the jury

was instructed as to the applicable law. At the conclusion of the trial, the jury found Mattingly guilty as charged.

[11] On December 19, 2014, a sentencing hearing was conducted. The trial court entered judgments of conviction against Mattingly at that time, and sentenced him to twenty six years imprisonment for each count of Dealing in Methamphetamine and twenty months imprisonment for Maintaining a Common Nuisance, with all the terms running concurrent with one another. This yielded an aggregate term of imprisonment of twenty six years.

[12] This appeal ensued.

# Discussion and Decision

[13] Mattingly raises for our review the sole question of whether the state adduced sufficient evidence to rebut his affirmative defense of entrapment. We review a claim of entrapment under the same standard that applies to other sufficiency challenges. *Griesemer v. State*, 26 N.E.3d 606, 608 (Ind. 2015). Thus, we do not reweigh evidence or reassess the credibility of witnesses. *Id.* We look to the probative evidence supporting the verdict and the reasonable inferences drawn therefrom. *Id.* If a reasonable trier of fact could infer beyond a reasonable doubt that the defendant was guilty, we will affirm the defendant's conviction. *Id.*

[14] In Indiana, the affirmative defense of entrapment is defined by statute:

> (a) It is a defense that:

> (1) the prohibited conduct of the person was the product of a law enforcement officer, or his agent, using persuasion or other means likely to cause the person to engage in the conduct; and
>
> (2) the person was not predisposed to commit the offense.
>
> (b) Conduct merely affording a person an opportunity to commit the offense does not constitute entrapment.

I.C. § 35-41-3-9.

[15] Entrapment need not be formally pled. *Griesemer*, 26 N.E.3d at 609. "[R]ather, it is raised, often on cross-examination of the State's witnesses, by affirmatively showing the police were involved in the criminal activity and expressing an intent to rely on the defense." *Id.* Once entrapment has been raised, "[t]he State then has the opportunity for rebuttal, its burden being to disprove one of the statutory elements beyond a reasonable doubt." *Id.* There is no entrapment if the State shows either (1) there was no police inducement, or (2) the defendant was predisposed to commit the crime. *Id.* The entrapment defense exists because "we do not tolerate government activity that lures an otherwise law-abiding citizen to engage in crime. After all, the job of law enforcement is to catch established criminals, not manufacture new ones." *Id.* (citations omitted).

[16] Mattingly contends that there was a failure of proof as to the second element of entrapment, predisposition. Whether a defendant was predisposed to commit a charged crime is a question for the trier of fact. *Turner v. State*, 993 N.E.2d 640,

644 (Ind. Ct. App. 2013), *trans. denied*. "A jury may properly find predisposition from such circumstances as familiarity with drug jargon and prices, engaging in multiple transactions, and undertaking to arrange future transactions." *Id.*

[17] Here, the State produced numerous items of evidence relevant to the question of Mattingly's predisposition. Mattingly twice manufactured methamphetamine using supplies provided to Bowman by Posey County law enforcement personnel. Video and audio recordings from the transactions on February 9 and March 1, 2013 were introduced into evidence; the recordings show Mattingly handing over methamphetamine to Bowman without objection on both occasions. Bowman testified that when he asked Mattingly for methamphetamine, Mattingly requested pseudoephedrine pills and lithium batteries for the production process. Mattingly produced the methamphetamine outside of Bowman's presence, and on both occasions Mattingly called Bowman several hours after obtaining the supplies to inform Bowman that the manufacturing process was complete. Further, during his testimony at trial, Mattingly testified to his knowledge of the methamphetamine production process; explained how he was able to improve the quality of the methamphetamine he produced on March 1, 2013, and stated that he wanted to improve the quality of the drug because he wanted to impress Bowman; and demonstrated knowledge of terminology related to quantities and prices for methamphetamine, as well as knowledge about the salability of poorly produced methamphetamine. *See id.*

Simply put, there was sufficient evidence from which a reasonable jury could conclude beyond a reasonable doubt that the State had rebutted Mattingly's claim of entrapment. We accordingly affirm Mattingly's convictions.

Affirmed.

Baker, J., and Mathias, J., concur.