## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 31 2016, 9:49 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Bruce W. Graham
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Kathrine Modesitt Cooper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Mathias Gaumer,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

May 31, 2016

Court of Appeals Case No.
79A02-1510-CR-1601

Appeal from the Tippecanoe
Superior Court

The Honorable Randy J. Williams,
Judge

Trial Court Cause No.
79D01-1402-FC-6

**Riley, Judge.**

## STATEMENT OF THE CASE

[1] Appellant-Defendant, Mathias Daniel Gaumer (Gaumer), appeals his conviction for child solicitation, a Class C felony, Ind. Code § 35-42-4-6(c) (2013); and attempted possession of child pornography, a Class D felony, I.C. §§ 35-41-5-1(a); -42-4-4(c) (2013).

[2] We affirm.

## ISSUE

[3] Gaumer raises one issue on appeal, which we restate as the following: Whether the State presented sufficient evidence to rebut Gaumer's entrapment defense.

## FACTS AND PROCEDURAL HISTORY

[4] On February 5, 2014, Lieutenant Brian Gossard (Lieutenant Gossard) was working in the Juvenile Detective Division of the Lafayette Police Department in Tippecanoe County, Indiana. The Juvenile Detective Division's "main responsibility was to handle cases where there were . . . crimes against children." (Tr. p. 16). Because the internet is a medium that individuals utilize to commit crimes against children, the Juvenile Detective Division frequently monitors various internet sites for indications of child exploitation.

[5] That day, as part of his regular duties, Lieutenant Gossard read through "the ads in the personal section of Craigslist to see if there are any key words that might trigger a response[.]" (Tr. p. 20). In the "casual encounters" section of Craigslist, Lieutenant Gossard came across the following ad:

**freaky real slut – m4w – 44 (monticello)**

lookin to find that freaky little slut that is willing to try anything twice.  everybody seems to be fake or just not willing to take a chance.  I will do anything anything u want me to do for u.  cant wait to get my mouth on some freaky pussy.  just luv to lick pussy and dam good at it.  want to slam my cock in ur mouth and blow my load.  lets get together and have a little freaky fun..  don't be shy any age is fine with me.. the younger the better.  but any age is fine u all can be a freak

(State's Exh. 1) (*sic* as to all grammatical and spelling errors).  Lieutenant Gossard observed that this ad contained "[t]he key words" of "any age" and "younger" to warrant an undercover investigation.  (Tr. p. 23).

[6] Using the alias of "Jasmine Rogers" (Rogers) and an email address of "little jas00@gmail.com," Lieutenant Gossard responded to the personal ad.  (State's Exh. 3).  Throughout the day on February 5, 2014, and continuing into February 6, 2014, the following conversation ensued between Lieutenant Gossard, posing as Rogers, and the poster of the Craigslist ad:

> [Rogers:]     saw your add.  i liked it.  :)  how young can you handle?
>
> [Ad Poster:]  i can handle as young as it can get luv the young ladies they seem to be more freaky.  tell me about u and what u want
>
> [Rogers:]     im kinda new to this whole thing but my bestie had a lot of fun on here.  what are you into?

[Ad Poster:]  I am into just about anything.  whatever u like and want is what I want to do..  no pressure to do anything u don't wanna.  just wanna play and lick some good tasty pussy.  is urs tasty?  I bet it is.  tell me about u age ??  have u done anything like this bbefore?  what do U want to do?  don't be shy

[Rogers:]  im all about trying something at least once.  :)  im 14 now but have some experience.  whats the craziest thing you have done?  :)

[Ad Poster:]  idk[1] talkin to a 14 year old is a little freaky isn't it?  how do u think we ccan do this?  did u look at my age on the posting?  do u really want to do this

[Ad Poster:]  wht experience have u had

[Rogers:]  your age doesnt bother me.  adn we could do whatever you waant.  ive only done the regular stuff but looking to explore :)

[Ad Poster:]  send me a pic of ur pussy

[Ad Poster:]  where ru right now I will come by and see how u suck dick

[Ad Poster:]  see that's what I thought ur too young to be doin this

---

[1]  Lieutenant Gossard explained that "idk" stands for "I don't know."  (Tr. p. 31).

[Rogers:]     too young?? you gotta give me a minute to hit you back :) are you in town?

[Ad Poster:] On my way to work. If u wanna play, I can come get u and stay home from work and play with u. Text me. [Phone number provided.]

[Ad Poster:] We'll. what's up

[Rogers:]     my parents are so lame. my dad wont give me my phone back so I can text. :( so frustrated…

[Rogers:]     are you at work?

[Ad Poster:] Yeah at work right now. Will be getting off early and be back in town bout 930. Can u go then?

[Ad Poster:] Be in town at 930. Where ru gonna be

[Rogers:]     cant sneak out tonight but im gonna skip school tomorrow. what do you think?

[Ad Poster:] idk that's up to u I wont be able to get u till bout noon, how u gonna do that

[Rogers:]     thats fine. i will just go over to my cousins house for a while. i have skipped before. you only get in trouble if you do it to much. what are you going to do when we finally meet up? ;)

[Ad Poster:] that's up to u we will only have a couple hours but it can be fun.. how about I make u feel stuff u never

have felt before.. I can promise u that what ru gonna do for me

[Rogers:]    is that going to be enough time?  :)  i am open to anything even the crazy stuff.  Will have to surprise you.  or you can get creative ;)

[Ad Poster:]    I can try to get u sooner how am I gonna talk to u tomorrow?  u still got my number?  what ru gonna do to me?  what do u want to do to me?

[Rogers:]    i will email you tomorrow and gonna try to get my phone back.  we can start slow but then gonna get crazy!!!!!  u use protection?

[Ad Poster:]    Always use.  U gotta get that phone or we will not be able to get together until.  U do

[Ad Poster:]    Hey do u got a Facebook page?  What is it

[Rogers:]    you still picking me up today?

[Ad Poster:]    When and where ru

[Rogers:]    i can walk over to the family dollar on teal.  noon?

[Ad Poster:]    U wanna meet earlier than that

[Rogers:]    i am going to shower and then i can walk over.  can you get here by 11?

[Ad Poster:] Prolly gonna be 12.  Take ur time.  How am I gonna know who ur.  We have never met

[Rogers:] thats fine.  im short and will be wearing my blue coat with fur around the hood.  what will you be driving?  i can watch for you.

[Ad Poster:] I will be driving a grey vlokswagen jetta I will prolly be there by 1130.

[Rogers:] ok.  What are you going to do to me when we hook up?  ;)

[Ad Poster:] We will talk bout that when I get there

(State's Exh. 3) (*sic* as to all grammatical and spelling errors).  During the course of the conversation, Lieutenant Gossard noticed that, in addition to the Craigslist-generated email address associated with the post—*i.e.*, wkgd5-4319030578@pers.craigslist.org—several of the poster's responses included the email address "tripleex69@yahoo.com."  (Tr. p. 33).  The name associated with the Yahoo account was "Dan Gaumer."  (Tr. p. 33).

[7] Shortly before noon on February 6, 2014, Lieutenant Gossard, along with several detectives and a uniformed police officer, stationed themselves in the vicinity of the Family Dollar store, located at 1400 Teal Road in Lafayette.  When a gray Volkswagen Jetta pulled into the Family Dollar parking lot, the officers initiated a traffic stop.  The driver, who was identified as forty-seven-year-old Gaumer, was transported to the police station.  The officers searched

Gaumer's vehicle and found "a couple bottles of lubricant." (Tr. p. 52). A condom was also recovered from Gaumer's coat pocket. During his police interview, Gaumer acknowledged that he posted the ad on Craigslist; that he engaged in the email correspondence with Rogers; and that his possession of the condom "looked bad." (Tr. p. 99). However, Gaumer also stated that "he didn't necessarily believe [that Rogers was only fourteen years old] but wasn't for sure" based on the fact that Craigslist requires all users of the personal ads section to be at least eighteen years old. (Tr. p. 94).

[8] On February 7, 2014, the State filed an Information, charging Gaumer with child solicitation, a Class C felony; and attempted possession of child pornography, a Class D felony. On May 20 through 21, 2014, the trial court conducted a jury trial. At the close of the evidence, the jury advised the court that it was unable to reach a verdict. Accordingly, the trial court declared a mistrial. On June 16 through 17, 2015, the trial court held a retrial, during which Gaumer raised the defense of entrapment, and the jury received an entrapment instruction. At the close of the evidence, the jury found Gaumer guilty as charged. On September 21, 2015, the trial court conducted a sentencing hearing. The trial court imposed a term of four years for Count I and a term of one and one-half years for Count II, with the sentences to run concurrently. Of Gaumer's aggregate four-year-sentence, the trial court ordered that one year be executed in the Indiana Department of Correction and three years be suspended to probation.

[9] Gaumer now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Standard of Review*

On appeal, Gaumer concedes that the State established the elements of Class C felony child solicitation and Class D felony attempted possession of child pornography. However, he claims that the State failed to rebut his defense of entrapment. "Entrapment is an affirmative defense that admits the facts of the crime but claims that the act was justified." *Nichols v. State*, 31 N.E.3d 1038, 1041 (Ind. Ct. App. 2015).

When reviewing a claim of entrapment, our court relies on "the same standard that applies to other challenges to the sufficiency of evidence." *Griesemer v. State*, 26 N.E.3d 606, 608 (Ind. 2015) (quoting *Dockery v. State*, 644 N.E.2d 573, 578 (Ind. 1994)). Accordingly, we will neither reweigh the evidence nor assess the credibility of witnesses. *Id.* We consider "the probative evidence supporting the verdict and the reasonable inferences drawn from that evidence[,]" and we will affirm the conviction "[i]f we find a reasonable trier of fact could infer guilt beyond a reasonable doubt." *Id.*

### II. *Entrapment Defense*

It is well established that "[t]he government may use undercover agents to enforce the law." *Id.* (citing *Sorrells v. United States*, 287 U.S. 435, 441 (1932)). Indeed, our supreme court has recognized that "undercover agents can be invaluable in the prevention, detection, and prosecution of crime, and 'it is the duty of conscientious and efficient law enforcement officers to make such efforts.'" *Id.* (quoting *Gray v. State*, 231 N.E.2d 793, 795 (Ind. 1967)).

Nonetheless, the tactics of government agents "must be measured" as we will "not tolerate government activity that lures an otherwise law-abiding citizen to engage in crime." *Id.* Because "the job of law enforcement is to catch established criminals, not manufacture new ones[,] [o]ur entrapment defense aims to sort the two." *Id.*

[13] Indiana's entrapment statute provides as follows:

> (a) It is a defense that:
>     (1) the prohibited conduct of the person was the product of a law enforcement officer, or his agent, using persuasion or other means likely to cause the person to engage in the conduct; and
>     (2) the person was not predisposed to commit the offense.
> (b) Conduct merely affording a person an opportunity to commit the offense does not constitute entrapment.

I.C. § 35-41-3-9 (2013). A defendant is not required to formally plead an entrapment defense; rather, it is raised "by affirmatively showing the police were involved in the criminal activity and expressing an intent to rely on the defense." *Griesemer*, 26 N.E.3d at 609. Once a defendant has indicated that he plans to rely on an entrapment defense and has established police involvement, "the burden shifts to the State to rebut the inducement element, or demonstrate the defendant's predisposition to commit the crime." *Nichols*, 31 N.E.3d at 1041 (citations omitted).

[14] "Officers are involved in the criminal activity only if they 'directly participate in it.'" *Griesemer*, 26 N.E.3d at 609. In this case, there is no dispute that Lieutenant Gossard was a direct participant in the online exchange of sexually

explicit messages with Gaumer. Therefore, in order to rebut the first element—inducement—"the State must prove police efforts did not produce the defendant's prohibited conduct because those efforts lacked a 'persuasive or other force.'" *Nichols*, 31 N.E.3d at 1041 (quoting *Griesemer*, 26 N.E.3d at 609).[2]

[15] Here, we find absolutely no indication anywhere in the conversation between Gaumer and Rogers that Lieutenant Gossard exerted any pressure over or gave an "explicit direction or order" for Gaumer to engage in the prohibited conduct. *Albaugh v. State*, 721 N.E.2d 1233, 1237-38 (Ind. 1999) (finding entrapment where the "law enforcement officer played a *direct role* in influencing Albaugh to *leave his home* in the middle of the night to move his truck, only minutes later arresting him for driving while intoxicated"). Rather, the evidence establishes that Gaumer posted a personal ad in the "casual encounters" section of Craigslist, seeking a "freaky little slut" of "any age"—"the younger the better." (State's Exh. 1). Lieutenant Gossard, posing as Rogers, initiated a conversation by inquiring as to "how young" of a woman Gaumer could "handle." (State's

---

[2] We note that in his appellate brief, Gaumer addresses only the second prong of the entrapment statute—predisposition. He does not argue that the State failed to present sufficient evidence of inducement—that is, that Gaumer's criminal conduct was the product of the police "using persuasion or other means likely to cause the person to engage in the conduct." I.C. § 35-41-3-9(a)(1) (2013). Instead, it appears that Gaumer presumes the first prong is satisfied based on the mere fact that the police were "*involved* in the criminal activity" notwithstanding whether there is evidence of inducement. (Appellant's Br. p. 10) (emphasis added). We disagree. *See Griesemer*, 26 N.E.3d at 609 ("There is thus no entrapment if the State shows either (1) there was no police inducement, or (2) the defendant was predisposed to commit the crime."). Thus, because the State need only rebut one of the elements of the entrapment statute, Gaumer has waived his claim on appeal by failing to set forth a cogent argument regarding both prongs. Ind. Appellate Rule 46(A)(8)(a). Waiver notwithstanding, we elect to address this case on its merits.

Exh. 3). Gaumer responded that he "can handle *as young as it can get* luv the young ladies they seem to be more freaky." (State's Exh. 3) (emphasis added).

[16] During his police interview, Gaumer stated that he "didn't necessarily believe [that Rogers was only fourteen years old] but wasn't for sure" because Craigslist requires its users to be at least eighteen years old. Nonetheless, after Rogers specifically stated that she was only fourteen years old, Gaumer did not end the conversation or even further probe as to whether Rogers was being honest about her age. Instead, Gaumer—who was specifically seeking "freaky" sexual conduct—suggested that Rogers' young age constituted the "freaky" experience he so desired. (State's Exh. 1 & 3). Gaumer then advised Rogers to consider his own age and asked whether she really "want[ed] to do this." (State's Exh. 3).

[17] Despite knowing Rogers' age, Gaumer was the first one to explicitly mention sexual activity: he instructed her to "send me a pic of ur pussy" and asked "where ru right now I will come by and see how u suck dick." (State's Exh. 3). *See Nichols*, 31 N.E.3d at 1042 (finding the police officer did not induce the defendant to commit prostitution even though the police officer was the first to mention sexual activity because he was merely asking the defendant questions and did not exert any persuasive or other force over her to engage in the conduct). When Rogers did not immediately reply, Gaumer baited her by suggesting that she was "too young to be doin this." (State's Exh. 3). Despite his brief admission regarding Rogers' juvenile status, Gaumer readily proposed that he would stay home from work to "play with" Rogers if she was willing

and promised to "make u feel stuff u never have felt before." (State's Exh. 3). Ultimately, Gaumer and Rogers planned to meet the following day. When Gaumer arrived at the meeting place at the arranged time, he was prepared to meet a fourteen-year-old girl for sexual activity—as evidenced by the condom and lubricant in his possession.

[18] Furthermore, it was Gaumer—not Lieutenant Gossard—who was persistent in arranging a rendezvous with Rogers. In fact, Lieutenant Gossard, as Rogers, continually reminded Gaumer about her young age, such as by hinting at the fact that she was subject to her parents' control regarding her inability to sneak out of the house and as to the use of her cell phone, as well as the fact that she could not drive herself and had to skip school to meet with him. Each time he did so, Lieutenant Gossard essentially provided Gaumer with an opportunity to recognize the wrongfulness of his conduct and to end the conversation. Instead, Gaumer continued to send provocative messages and followed through with his plans to meet Rogers, whom he believed to be a fourteen-year-old girl. Lieutenant Rogers did nothing more than present Gaumer with an opportunity to commit the charged offenses, which does not rise to the level of entrapment. I.C. § 35-41-3-9(b) (2013).

[19] Accordingly, we find that the State presented sufficient evidence for a trier of fact to reasonably determine that Lieutenant Gossard's involvement "lacked a 'persuasive or other force'" necessary to induce Gaumer's criminal conduct. *Nichols*, 31 N.E.3d at 1041 (quoting *Griesemer*, 26 N.E.3d at 609). Because we have determined that Lieutenant Gossard did not induce Gaumer's conduct, we

need not address his arguments regarding his predisposition to commit the offense. *See Griesemer*, 26 N.E.3d at 610. We conclude that the State sufficiently rebutted Gaumer's entrapment defense.

## CONCLUSION

[20] Based on the foregoing, we conclude that the State presented sufficient evidence to rebut Gaumer's entrapment defense, and we therefore affirm his conviction.

[21] Affirmed.

[22] Kirsch, J. and Pyle, J. concur