## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 23 2017, 8:35 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jack Quirk
Muncie, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Tyler G. Banks
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Ronnie L. Brown, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | June 23, 2017 <br><br> Court of Appeals Case No. <br> 18A02-1701-CR-124 <br><br> Appeal from the Delaware Circuit Court <br><br> The Honorable John M. Fieck, Judge <br><br> Trial Court Cause No. <br> 18C04-1608-F4-57 |

**Altice, Judge.**

**Case Summary**

[1] Ronnie Brown was convicted of two counts of dealing in cocaine within 500 feet of a public park as Level 4 felonies and one count of possession of marijuana as a Class B misdemeanor. On appeal, Brown presents two issues for our review:

> 1. Did the State present sufficient evidence to rebut Brown's entrapment defense?

> 2. Did the State present sufficient evidence to prove that Brown was dealing cocaine within 500 feet of a public park?

[2] We affirm.

## Facts & Procedural History

[3] After receiving information from a confidential informant (CI), several officers with the Delaware County Sheriff's Department began to investigate Brown on suspicion of dealing in controlled substances. During the afternoon of August 8, 2016, officers met with the CI at a prearranged location. The CI placed a phone call to Brown with the plan being "to go to meet with Ronnie Brown and purchase sixty dollars worth of crack." *Transcript Vol. 2* at 210. Brown and the CI agreed to meet at a residence on East 8th Street in Muncie. Prior to leaving to meet up with Brown, the CI was searched and no weapons or contraband were found. The CI was then given sixty dollars in cash that had been photocopied and he was fitted with audio and video recording devices. Undercover officer Timothy Mitchell drove the CI to the buy location.

During the drive, the CI explained to Officer Mitchell that he had spoken to Brown earlier and confirmed that Brown was going to have cocaine to sell. They also discussed how the controlled-buy would take place, with the CI conducting the transaction as he normally did—that is, by calling Brown when he arrived to say he was "coming up the alley" next to the house on East 8th Street. *State's Exhibit 1*. As Officer Mitchell approached that location, the CI called Brown and said, "Hey man, I'm pulling up." *Id*. Brown responded that he would be there in five minutes.

The CI said he would wait, and approximately ten minutes later, Brown parked his vehicle next to the house and exited the car. The CI got out of Officer Mitchell's car and approached a table in the corner of the yard where Brown was standing. Officer Mitchell observed the back yard, but his view of the table was obscured. The CI handed Brown the sixty dollars that he had been given to make the purchase. The CI then sat at the table and Brown walked back to his car. Brown stood briefly beside his car and then walked back to the table and sat down. Underneath the table, Brown removed three rocks of cocaine from a small plastic bag and then, above the table, placed the cocaine in the CI's hand. The CI then stood up, told Brown he would call him later, and returned to Officer Mitchell's vehicle. When the CI got into the vehicle, he handed the cocaine he purchased from Brown to Officer Mitchell.

Two days later, officers arranged a second controlled buy of cocaine from Brown. The officers used the same CI and followed the same procedures as used in the first sale—the CI phoned Brown to set up the sale and then the CI

was searched to ensure the absence of contraband, fitted with recording devices, and provided with cash that had been recorded. In the phone call to Brown, the CI said, "Just trying to get something. You good?" *State's Exhibit 20*. After Brown affirmatively responded, the CI indicated that he wanted to get "a sixty," and Brown agreed. *Id*. An officer testified that only mentioning a dollar amount was consistent with typical drug transactions in that they typically involve "limited talk" about the details of the sale. *Transcript Vol. 2 at 172*.

[7] Officer Mitchell again drove the CI and parked the vehicle in the same location on East 8th Street. The CI contacted Brown and told him he had arrived. The CI then exited Officer Mitchell's vehicle and as he approached the house, Brown exited the back door. Brown and the CI walked over to the same table in the yard where the transaction had occurred two days prior. As he neared the table, Brown asked the CI, "How much you need[?]" and the CI responded "Sixty." *Id*. at 232; *see also State's Exhibit 20*. The CI then handed Brown sixty dollars and Brown handed cocaine to the CI. The CI returned to Officer Mitchell's vehicle and gave him the purchased cocaine.

[8] Based on these two controlled buys, officers obtained a search warrant for the home on East 8th Street. When officers arrived to execute the search warrant, Brown was found outside the house smoking marijuana and in possession of another marijuana cigarette. Inside the house, police found several digital

scales, glass smoking instruments, and mail addressed to Brown at that address.[1]

[9] Additionally, Officer Mitchell testified that he made a measurement from the location where the drug transactions took place to a nearby public park, Heekin Park, using a computer software known as New World Maps. Using an aerial view of the area, Officer Mitchell determined that the distance from the transaction location and the park was 476 feet. Officer Mitchell made a second measurement using Google Maps, which resulted in a measurement of around 480 feet between the transaction location and the park.

[10] On August 16, 2016, the State charged Brown with two counts of dealing in cocaine within 500 feet of a public park as Level 4 felonies, possession of cocaine as a Level 6 felony, maintaining a common nuisance as a Level 6 felony, possession of marijuana as a Class B misdemeanor, and possession of paraphernalia as a Class C misdemeanor. A jury trial commenced on October 24, 2016. During the trial, the State moved to dismiss the public nuisance charge. The jury found Brown guilty of the two counts of dealing in cocaine and the single count of possession of marijuana. The jury did not reach a verdict on the remaining counts, which were ultimately dismissed. The trial court subsequently sentenced Brown to an aggregate term of twenty years. Additional facts will be provided as necessary.

---

[1] Mail addressed to Brown's girlfriend was also found in the house.

## Discussion & Decision

## 1. Entrapment

[11] Brown argues that the State failed to rebut his entrapment defense. We review the sufficiency of the evidence presented to rebut entrapment the same as we review all sufficiency claims. *Greisemer v. State*, 26 N.E.3d 606, 608 (Ind. 2015). We neither reweigh the evidence nor reassess the credibility of witnesses. *Id*. Instead, we look to the probative evidence supporting the verdict and the reasonable inferences drawn from that evidence. *Id*. If we find a reasonable trier of fact could infer guilt beyond a reasonable doubt, we will affirm the conviction. *Id*.

[12] Entrapment requires that the defendant's criminal conduct be a "product of a law enforcement officer, or his agent, using persuasion or other means likely to cause the person to engage in the conduct" and that the defendant was not already predisposed to commit the offense. Ind. Code § 35-41-3-9. Once the defendant raises the defense, the State has the opportunity for rebuttal, its burden being to disprove one of the statutory elements beyond a reasonable doubt. *Riley v. State*, 711 N.E.2d 489, 494 (Ind. 1999). There is thus no entrapment if the State shows either (1) there was no police inducement, or (2) the defendant was predisposed to commit the crime. *McGowan v. State*, 674 N.E.2d 174, 175 (Ind. 1996) (holding because entrapment is established by the existence of two elements, it is defeated by the nonexistence of one).

[13] Inducement requires law enforcement's direct participation in a crime. *Greisemer*, 26 N.E.3d at 609 (citing *Shelton v. State*, 679 N.E.2d 499, 502 (Ind. Ct. App. 1997)). To rebut the inducement element, the State must prove police efforts did not produce the defendant's prohibited conduct because those efforts lacked "a persuasive or other force." *Id.* (quoting *Williams v. State*, 274 Ind. 578, 584, 412 N.E.2d 1211, 1215 (1980)). "Conduct merely affording a person an opportunity to commit the offense does not constitute entrapment." I.C. § 35-41-3-9(b).

[14] The State's evidence clearly demonstrated that the only persuasion Brown needed to sell cocaine was a phone call from a CI requesting a certain dollar amount. The police did nothing else to implant the idea of selling drugs in Brown's head. The CI had informed the officers that he had previously purchased cocaine from Brown and then, in the same manner, purchased cocaine from Brown on August 8 and 10, 2016, while law enforcement was investigating Brown's dealing activities. A reasonable jury could have found that police did not use such persuasive force to implant the idea of criminality into Brown's mind.

[15] Even if sufficient inducement were shown, the State's evidence proved that Brown was predisposed to sell cocaine. When the CI called Brown to set up the two controlled buys, the CI had already established a manner of dealing with Brown when purchasing cocaine from him. The two controlled buys were executed consistent with the prior practice between Brown and the CI. Further, items associated with selling drugs were found during the search of the

residence. The pre-arranged and established meeting location, the practices and protocols followed by the CI and Brown, and knowledge of drug terminology all show that Brown was predisposed to sell drugs before any police involvement. *See Silva v. State*, 410 N.E.2d 1342, 1345 (Ind. Ct. App. 1980) (noting that evidence of events at the time of the sale, including the defendant's knowledge of drug terminology, willingness, and established protocol, is sufficient to sustain proof of predisposition).

[16] The State's evidence sufficiently rebuts any notion of entrapment.

## 2. Sufficiency

[17] Brown argues that the State failed to prove the enhancement that he sold cocaine within 500 feet of a public park. We disagree.

[18] The State submitted as part of State's Exhibit 1 an aerial map with an "X" marking the location of where the drug transactions took place. Officer Mitchell explained that he measured from the back of the property on East 8th Street south to a sidewalk in Heekin Park. The distance between these two points measured 476 feet. Officer Mitchell also testified that he did an additional measurement using Google Maps and received a result of 480 feet. The picnic table at which the drug transactions took place was located in the back yard of the property on East 8th Street. The location of the picnic table was noted on the map, which made it clear that the table was located within the parameters Officer Mitchell used to calculate the above distances. The State

presented sufficient evidence from which the jury could have concluded that Brown sold cocaine within 500 feet of a public park.

[19] Judgment affirmed.

[20] Kirsch, J. and Mathias, J., concur.