## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 28 2020, 6:09 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Anthony C. Lawrence
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Marjorie H. Lawyer-Smith
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Rogdrick Vontrae Stewart,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

January 28, 2020

Court of Appeals Case No.
19A-CR-458

Appeal from the Madison Circuit Court

The Honorable Angela Warner Sims, Judge

Trial Court Cause No.
48C01-1502-F6-246

**Sharpnack, Senior Judge.**

# Statement of the Case

[1] Rogdrick Vontrae Stewart appeals from his conviction of one count of selling a vehicle with a destroyed, removed, altered, covered, or defaced identification number,[1] as a Level 6 felony,[2] and two counts of impairment of identification,[3] each as Class A misdemeanors,[4] challenging the sufficiency of the evidence supporting those convictions.  We affirm.

# Issue

[2] The sole issue presented on appeal is whether there is sufficient evidence to support Stewart's convictions.

# Facts and Procedural History

[3] In July of 2011, Jill Cooley[5] was in a relationship with Stewart.  Stewart bought and sold motorcycles, worked on them, and raced them.  He stored the motorcycles in his mother's garage, a detached garage near his house, and at Jason Fullington's ("Fullington") house.  Fullington was one of Stewart's friends, and they worked on motorcycles together as a hobby.

---

[1] Ind. Code § 35-43-6.5-1 (2015).

[2] Ind. Code § 35-50-2-7 (2013).

[3] Ind. Code § 35-43-7-4 (1989).

[4] Ind. Code § 35-50-3-2 (1977).

[5] At the time of the relationship, Jill Cooley's name was Jill Sachse.  Tr. Vol. II, p. 40.

[4] In July 2012, Cooley showed Stewart the details about a 2006 Kawasaki ZX14 motorcycle that was listed for sale. Stewart decided he wanted to buy it, but he could not get a loan in his name. Stewart made a down payment toward the purchase price for the motorcycle and Cooley financed the remainder of the purchase price in her name. The two agreed that Stewart would give Cooley the money for the loan payments. Stewart asked the police to check the vehicle identification number ("VIN") to make sure the motorcycle was not stolen.

[5] Stewart and Cooley ended their relationship in the spring of 2013. At that time, the balance reflected that the payoff amount on Cooley's motorcycle loan was a little more than $3,000.00. Stewart took the motorcycle with him and continued to give Cooley money for the loan payments but only for a few months after they broke up. In the summer of 2013, Stewart had completely stopped giving Cooley money for the loan payments and told her that he was going to return the motorcycle to her instead.

[6] Stewart told her that the motorcycle's engine had been heavily damaged during a race. Cooley replied that she did not want him to return the motorcycle unless it was in the condition it was when purchased. After several discussions, the two eventually agreed that Stewart would install a new engine.

[7] On April 15, 2013, Auto Network, a business dealing in damaged vehicles with salvage titles, sold a motorcycle to Stewart. Auto Network's website contained a description of the motorcycle which read "[f]ront damage, hit hard, broken frame." Tr. Vol. II, p. 217. Stewart planned to have Fullington help him use

the engine from this motorcycle to replace the blown one on the Kawasaki before returning it to Cooley.

[8]  On July 15, 2013, Stewart delivered the frame of the Kawasaki and boxes of parts, leaving them on Cooley's sister's front yard. The condition of the Kawasaki was "[n]ot even close" to the condition of the motorcycle she had purchased. Tr. Vol. II, p. 53. It did resemble the motorcycle that Stewart had purchased from Auto Network. Stewart switched out some of the plastic, the chrome wheels, and some extras on the Kawaski, replacing them with cheaper parts from the salvaged motorcycle purchased through Auto Network.

[9]  Cooley filed a police report the same day. The VIN on the frame matched the VIN on the Kawasaki Cooley had purchased. However, Officer Eric Holtzleiter thought "something wasn't quite right" about the VIN and the plate it was on, so he suggested that Cooley take it to have it examined. Tr. Vol. II, p. 71.

[10]  Next, Cooley and Officer Holtzleiter took the motorcycle and parts left by Stewart to a Kawasaki dealer for an inspection. The VIN was suspicious looking because it was on a plate instead of being stamped into the frame, and the pattern of the number was inverted. Additionally, the original VIN had been removed under the plate. The dealer concluded that the VIN was not from the manufacturer and had been altered. The Kawasaki dealer removed the VIN plate in the presence of Cooley and Officer Holtzleiter.

[11]     A small claims suit between Cooley and Stewart ensued. The trial court ordered Cooley to return the motorcycle to Stewart and ordered him to pay Cooley the remainder of the loan after reassembling and selling the motorcycle.

[12]     In July 2013, Officer Holtzleiter conducted a traffic stop on Stewart while he was operating a motorcycle because Stewart did not have a motorcycle endorsement on his license. When Officer Holtzleiter checked the license plate, he discovered that it did not belong to that motorcycle. The motorcycle was impounded but later released.

[13]     In January 2015, Officer Michael Stephens performed a motor check on the Kawasaki, which Jordan Hines ("Hines") was purchasing from Stewart after Stewart had rebuilt it. The VIN was crooked and did not appear to be factory stamped. Further, the Kawasaki did not have a VIN sticker, which typically appears on motorcycles. Stewart later admitted stamping the VIN on it.

[14]     The odometer on the Kawasaki showed that it had 8,981 miles on it. The title Stewart gave to Hines, however, showed that it had 11,010 miles on it on July 30, 2012, and 40,000 on it on June 26, 2014. Additionally, the key to the motorcycle Cooley bought with Stewart did not work on the motorcycle Hines purchased from Stewart. Officer Stephens had the motorcycle towed and did not sign off on the inspection report because the VIN appeared to have been altered and the mileage had been doctored.

[15] Captain Mike Milbourn interviewed Stewart about the motorcycle as part of a subsequent investigation. Stewart refused to permit police officers to search the garages where he stored his other motorcycles and parts.

[16] After obtaining warrants, police officers searched the properties. During the search, officers found the title and affidavit of restoration for the motorcycle Stewart purchased from Auto Network listing the VIN on it. Police officers also found a motorcycle frame and another motorcycle that had been stolen. The frame had a VIN that was not installed by the manufacturer and was applied with screws and not stamped into the neck as it would have been if applied by the factory. Further, the federal certification label showed a different VIN. The number on the VIN plate matched the VIN for the motorcycle Stewart bought from Auto Network. The VIN on the label was for a motorcycle that had been reported stolen.

[17] Police also found a Honda motorcycle during the search of Stewart's property. The motor on the Honda matched that of a Honda motorcycle that had been reported stolen from Matthew Crain ("Crain"). Originally, it was a green 2009 CVR 600 RR motorcycle, but had been painted blue after it was stolen. Crain knew it was his motorcycle not only because it was the same make and model, but because there was a small piece of the seat missing on the tail end just as there was on his motorcycle when it was stolen. The original VIN for the motorcycle had been removed after it was stolen. The VIN that was on it when it was found had been attached and matched a rebuilt Honda CVR 929 motorcycle that Dalten Hamilton had sold to Stewart in 2014.

[18]     Based on what was located during the searches, an additional search warrant was issued for parts found in one of the properties. When police officers returned to execute the warrant, however, all of the parts had been removed.

[19]     A process is in place by which an owner of a vehicle can obtain a new VIN from the Bureau of Motor Vehicles ("BMV") for rebuilt or manufactured vehicles that do not have a VIN. Those numbers begin with the letter "M." Because none of the VINs recovered during the search of Stewart's property began with the letter "M," Stewart had not obtained the required manufactured VINs for the rebuilt vehicles.

[20]     The State charged Stewart with the following crimes: perjury as a Class D felony; selling a vehicle with a destroyed, removed, altered, covered, or defaced identification number as a Level 6 felony; forgery as a Level 6 felony; impairment of identification as a Class A misdemeanor; false informing as a Class A misdemeanor; conversion as a Class A misdemeanor; impairment of identification as a Class A misdemeanor; conversion as a Class A misdemeanor; impairment of identification as a Class A misdemeanor; and obstruction of justice as a Level 6 felony.

[21]     At the conclusion of his jury trial, the jury found Stewart guilty of selling a vehicle with a destroyed removed, altered, covered, or defaced identification number as a Level 6 felony, and two counts of impairment of identification each as a Class A misdemeanor. The trial court sentenced Stewart to an

aggregate sentence of 30 months with 24 months executed and 6 months suspended to formal probation. Stewart now appeals.

# Discussion and Decision

[22] Stewart challenges the sufficiency of the evidence for each of his convictions. Our standard of review in such appeals is well settled.

> We neither reweigh the evidence nor reassess the credibility of witnesses. Instead, we look to the probative evidence supporting the verdict and the reasonable inferences drawn from that evidence. If we find a reasonable trier of fact could infer guilt beyond a reasonable doubt, we will affirm the conviction.

*Griesemer v. State*, 26 N.E.3d 606, 608 (Ind. 2015) (internal cites omitted). "It is not necessary that the evidence 'overcome every reasonable hypothesis of innocence.'" *Sallee v. State*, 51 N.E.3d 130, 133 (Ind. 2016) (quoting *Moore v. State*, 652 N.E.2d 53, 55 (Ind. 1995)). The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict. *Id* (quoting *Drane v. State*, 867 N.E.2d 144, 147 (Ind. 2007)).

[23] We address each of Stewart's convictions in turn.

[24] To establish that Stewart committed the offense of knowingly selling or offering to sell a vehicle with a destroyed, altered, defaced, covered, or removed identification number as a Level 6 felony, the State was required to prove beyond a reasonable doubt the following:

A person that sells or offers for sale a vehicle, a vehicle part, or a watercraft knowing that an identification number or certificate of title of the vehicle, vehicle part, or watercraft has been:

(1) destroyed;
(2) removed;
(3) altered;
(4) covered; or
(5) defaced;

commits a Class A misdemeanor. However, the offense is a Level 6 felony if the aggregate fair market value of all vehicles, vehicle parts, and watercraft sold or offered for sale is at least seven hundred fifty dollars ($750) and less than fifty thousand dollars ($50,000), and a Level 5 felony if the aggregate fair market value of all vehicles, vehicle parts, and watercraft sold or offered for sale is a least fifty thousand dollars ($50,000).

Ind. Code § 35-43-6.5-1(a).

[25] The motorcycle Stewart sold[6] to Hines had an altered VIN. At trial, Stewart admitted that when Cooley returned the motorcycle to him after the order from the small claims court, he put a VIN on it. He did so knowing that it did not have one when it was returned and Stewart knew that he could not sell the motorcycle without a VIN. Stewart gave a VIN to Fullington so Fullington

---

[6] Cooley testified that she financed a portion of the cost to purchase the Kawasaki. Tr. Vol. II, p. 46. She stated that Stewart provided her with money for loan payments for only a few months after their relationship ended at which time she still owed approximately $3,000.00 on the loan. *Id.* at 51-52. The small claims court ordered her to return the motorcycle and parts to Stewart for him to repair and sell. Stewart was to reimburse Cooley with proceeds from the sale of the motorcycle to pay off the loan. *Id.* at 61. Additionally, the probable cause affidavit reflects that Hines withdrew $5,000.00 from a bank account to purchase the Kawasaki. Appellant's App. Vol. II, p. 37. The probable cause affidavit further reflects that Hines told investigating officers that he had purchased the Kawasaki from Stewart in the amount of $4,200.00. *Id.* at 35. These dollar amounts are well within the range of fair market value to elevate the offense to a Level 6 felony.

could stamp it on the motorcycle. The small claims court instructed him to repair the motorcycle and sell it, but it did not order him to stamp a VIN on it himself instead of obtaining a manufactured VIN through the BMV for the rebuilt motorcycle. During his testimony at trial, Stewart testified that he was familiar with the process of obtaining a VIN from the BMV. The evidence is sufficient to support Stewart's conviction on this count.

[26] Stewart was also convicted of one count of impairment of identification based on his alteration of the VIN on the motorcycle he sold to Hines. To establish that Stewart committed this offense as a Class A misdemeanor, the State was required to prove beyond a reasonable doubt the following:

> A person who intentionally or knowingly conceals, alters, damages, or removes an identification number of a product with the intent to conceal the identity of the product and without the consent of the original manufacturer of the product commits impairment of identification, a Class A misdemeanor.

Ind. Code § 35-43-7-4.

[27] The record reflects that Stewart initially put a VIN plate on the motorcycle when he first returned the frame and parts to Cooley. This plate was removed by the dealer, who, when doing so, noted that the original VIN underneath the plate had been erased. Stewart admitted to altering the VIN once again before selling the motorcycle to Hines by having Fullington stamp it onto the frame after the plate had been removed by the dealer.

[28]    In both instances, Stewart attempted to present the reconstructed motorcycle as the original one he and Cooley had purchased rather than obtaining the required manufactured VIN from the BMV. He admitted he altered the VIN twice by placing the plate on the frame and later stamping the number on the frame without the manufacturer's consent. The evidence is sufficient to sustain Stewart's conviction on this count.

[29]    Stewart was convicted of another charge of impairment of identification related to his possession of a motorcycle frame found during the execution of the search warrant. To establish that Stewart committed this offense as a Class A misdemeanor, the State was required to prove beyond a reasonable doubt the following:

> A person who intentionally or knowingly conceals, alters, damages, or removes an identification number of a product with the intent to conceal the identity of the product and without the consent of the original manufacturer of the product commits impairment of identification, a Class A misdemeanor.

Ind. Code § 35-43-7-4.

[30]    The motorcycle frame at issue had a VIN plate stamped with a number that matched the VIN for the salvage motorcycle Stewart purchased from Auto Network. That VIN plate was not installed by the manufacturer. Instead, it was applied with screws and not stamped into the neck as it would have been if applied by the factory. Additionally, the frame had a sticker with the VIN for a stolen vehicle on it.

[31] The evidence established that Stewart placed the clean VIN on the stolen frame to conceal the identification of the frame as stolen so he could rebuild and sell it. The evidence is sufficient to support Stewart's conviction on this count.

[32] Stewart points to evidence in the record to support his argument on appeal that he did not knowingly or intentionally alter the VINs or sell the motorcycle with an altered VIN. However, his argument amounts to a request to reweigh the evidence. The jury was in the best position to weigh the evidence and assess the credibility of the witnesses. Indeed, the jury found Stewart guilty of three counts, but not guilty of several other counts. The trier of fact must resolve conflicts in the evidence and decide which witnesses to believe or disbelieve. *Moore v. State*, 27 N.E.3d 749, 755-56 (Ind. 2015).

# Conclusion

[33] In light of the foregoing, we find the evidence is sufficient to support Stewart's convictions and affirm the trial court.

[34] Affirmed.

Bradford, C.J., and Vaidik, J., concur.